533 F.2d 959
 76-2 USTC P 9501
 M. Ralph CANNON, Petitioner-Appellant, Cross-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee,
Cross-Appellant.
Idus P. ASH and Georgia L. Ash, Petitioners-Appellees,
Cross-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant,
Cross-Appellee.
 Nos. 74-4150, 75-1143.
 United States Court of Appeals,
Fifth Circuit.
 June 21, 1976.
 
 Lester L. May, Kenneth A. Herridge, Dallas, Tex., for petitioner-appellant.
 Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Dept. of Justice, Bennet N. Hollander, Robert T. Duffy, Ernest J. Brown, Attys., Tax Div., U. S. Dept. of Justice, Meade Whitaker, Chief Counsel, I. R. S., Washington, D. C., W. John Howard, Jr., Tax Court Litigation, I. R. S., Dallas, Tex., for appellee.
 Peter Winstead, W. Mike Baggett, Dallas, Tex., for petitioner-appellee.
 Appeals from the Decisions of the Tax Court of the United States (Texas Cases).
 Before TUTTLE, AINSWORTH and CLARK, Circuit Judges:
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from a decision of the Tax Court which determined that each of the petitioners earned one-half of a total of $64,680 which it was stipulated had been turned over to one or both of them for wagering in the tax year 1967. The petitioners, neither of whom kept any records covering their extensive wagering operations, both claim that the Tax Court's Solomon-like decision, (I Kings 3:16-28) to cut the baby in half, was not supported by the evidence and must therefore be set aside.
 
 
 2
 It is undisputed that one Joe Hodges of Houston, Texas embezzled from a state bank, so far as is of importance in this litigation, the sum of $64,680 during the two months of October and November in 1967 and that he delivered that amount by means of six drafts or cash deliveries to petitioner Ash for betting on college football games during the 1967 Fall season. It is also undisputed that Ash delivered substantial amounts of this cash to petitioner Cannon. Ash represented to Hodges that he was placing the bets with Cannon as a bookmaker. Cannon acknowledged receipt of between $11,000 and $12,000 during this period of time from Ash. Cannon reported gambling net income of $15,040 for the year 1967 of which $7,000 was shown by his return to have been received prior to the two months in question. Cannon testified that all of the receipts which remained as net profits from his gambling during the year went into a shoe box and the sum of $15,040 was left in the shoe box at the end of the tax year or had been represented by cash deposits in the bank during the year. Cannon testified that he had voluntarily given to Hodges the sum of $5,000 in December 1967 when Hodges got in touch with him personally and made a plaint that he was in dire difficulties because of his embezzlements, and Cannon claims that this $5,000 should have been deducted from any amount which he otherwise would owe on his gambling receipts.
 
 
 3
 The Tax Court, very properly we think, after having read the testimony, stated in the following terms:
 
 
 4
 "The record in this case is unsatisfactory. Neither Ash nor Cannon had records to prove the amounts of cash they handled. The testimony of each was vague, unconvincing and entitled to little weight. The testimony of other witnesses lent little support to the contentions of either Ash or Cannon. The activities of both Ash and Cannon were illegal and the money that changed hands was embezzled from a bank. The $5,000 paid from Cannon to Hodges resembles hush money."
 
 
 5
 The Tax Court then without making specific findings, as it could not under the testimony then before it, made the following conclusion:
 
 
 6
 "Given such a record, we conclude that both parties failed to prove how much income they earned as a result of their illegal gambling activities with Hodges ill-gotten gains. Respondent admits an inconsistent position and acts as a stake holder. It would, therefore, seem inappropriate to tax both Ash and Cannon on the entire $64,680. Accordingly we hold that Ash and Cannon each earned one-half of the total sent from Hodges to Ash, or $32,340."
 
 
 7
 As conceded by counsel for one of the respondents:
 
 
 8
 "Of course, the Commissioner was always entitled to the presumption against both parties that his determination was correct."
 
 
 9
 This proposition has been clearly established since Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1934) when the Supreme Court stated:
 
 
 10
 "Unquestionably, the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." Citing Lucas v. Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 265, 74 L.Ed. 848, 849 and Wickwire v. Reinecke, 275 U.S. 101, 104, 48 S.Ct. 43, 44, 72 L.Ed. 184, 185 and Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212, 215.
 
 
 11
 Such a requirement is not met if the proof adduced before the Tax Court is insufficient to permit that Court to find that as to either or both of these petitioners the Commissioner's determination was erroneous. In dealing with this problem the Court of Appeals for the First Circuit, in United States v. Rexach had the following comment to make:
 
 
 12
 "First, language regarding the Commissioner's obligation to prove the existence and amount of the deficiency apparently stems from Helvering v. Taylor, supra, which held that once a taxpayer in a deficiency case has borne his burden of proving the Commissioner's determination invalid, he has no further obligation to show that no money is owed, or, if some, how much. But this happy state is reached only if the predicate is fulfilled, i. e., only if the taxpayer has carried his burden of persuading the factfinder that the deficiency was erroneous. 293 U.S. at 513, 514, 515, 55 S.Ct. 287, 79 L.Ed. 623. (Emphasis in original.) 482 F.2d 10, 17 n. 3 (1st Cir. 1973).
 
 
 13
 Since we conclude that the Tax Court was justified in not relying on the conflicting testimony of either of these petitioners in the two cases which were consolidated for hearings before that Court, this would justify the legal result of having the total amount taxed as income to both of the petitioners. The fact that the Tax Court ameliorated this condition by entering a decision for one-half of the amount as against each petitioner is certainly not a matter which either petitioner can here complain of.
 
 
 14
 Cannon asserts that even though the Tax Court could approve an assessment against him based upon receipt of income amounting to $32,340 this amount should be reduced by the sum of $15,040 already reported by him as income from gambling. The trouble with this is that the record clearly discloses that some $7,000 of the amount which he reported was represented by deposits in bank accounts made prior to the two months with which we are here concerned. Furthermore, Cannon's testimony is so vague and uncertain and unreliable that the Tax Court would not have had to accept a positive assertion by him, which he did not in fact make, that any amount of the monies received by him during October and November were a part of the $15,040 reported by him on his return. He did state in general terms that the $15,040 represented his entire net income from gambling for the year.
 
 
 15
 Cannon also claims that the $5,000 payment which he made to Joe Hodges in December of 1967 should not be included in income received by him during that year. There is, of course, no basis for this contention. The testimony shows without dispute that this amount was voluntarily given by him to Hodges. It was no part of any legal obligation and if it was in the nature of a compulsory payment, the Tax Court found it to be in the nature of "hush money" which is not a deductible item.
 
 
 16
 The decision of the Tax Court is AFFIRMED.
 
 CLARK, Circuit Judge (dissenting):
 
 17
 The Tax Court's equitable allocation cannot be justified by either the law or facts of this case. In approving this Solomonic approach, the majority tacitly exacerbates the difficulties inherent in the use of alternative inconsistent deficiency assessments and fails to credit the two credible items of proof adduced at trial. I respectfully dissent.
 
 
 18
 The majority correctly states that in the ordinary case the Commissioner's assessments are presumed valid until shown by the taxpayer to be erroneous or arbitrary. Likewise it cannot be seriously questioned that the Commissioner has the right to make inconsistent assessments in order to protect the fisc and insure against a potential "whipsaw" effect.[1] Estate of Goodall v. Commissioner, 391 F.2d 775 (8th Cir.), cert. denied, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968); Malat v. Commissioner of Internal Revenue, 302 F.2d 700 (9th Cir.), cert. denied, 371 U.S. 934, 83 S.Ct. 308, 9 L.Ed.2d 271 (1962).
 
 
 19
 What provokes me to dissent is that the majority applies these two principles in tandem to conclude that the Commissioner was entitled to recover the full amount against both taxpayers and that the Tax Court's amelioratory action in reducing the liability by half cannot be complained of on appeal. By consolidating the cases, the Commissioner gained protection against any deleterious effects the taxpayers' conflicting stories might have on his ability to collect the full amount from someone. With all the parties before it, the Tax Court could insure that the public would not lose tax revenues and that the Commissioner would not receive a windfall by recovering tax on the same income from two taxpayers. As the Commissioner readily concedes, the inconsistent assessments are merely a mechanism to guard against loss, not a procedural device to permit double recovery.
 
 
 20
 This court has never had occasion to decide the legal effect that should be accorded inconsistent assessments in a consolidated proceeding such as this. However, several cases have enunciated the rule that an arbitrary assessment is stripped of presumed validity. See, e. g., Lucia v. United States, 474 F.2d 565 (5th Cir. 1973) (en banc); Bar L. Ranch, Inc. v. Phinney, 426 F.2d 995 (5th Cir. 1970). In one sense, the assessments against Ash and Cannon are not arbitrary because the Commissioner had a factual basis for believing that either one or the other had received gambling income. However, the presumption clearly becomes irrational and arbitrary the moment it is extended to both taxpayers simultaneously in a consolidated proceeding. Cf. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Mobile, Jackson & Kansas RR Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910). At most, the Commissioner should be treated as a stakeholder and the dual assessments should mean only that the Commissioner's either-or determination is entitled to presumptive validity by the Tax Court to the extent of asserting that one or the other or both of the taxpayers together owe a single full recovery. Anything more is per se arbitrary and unfair.
 
 
 21
 If this were a true "whipsaw" situation involving separate proceedings against competing taxpayers where no credible evidence bearing on allocation could be ascertained, we would be faced with a different and more difficult question. It is not. Even conceding that neither taxpayer's whole story was worthy of belief, the court had before it reliable proof constituting a rational basis for the distribution of liability. That proof consisted of clear documentation that Ash received the $64,680 and Cannon's admission that $12,000 of that sum was wagered with him.[2]
 
 
 22
 The Tax Court itself decided and the majority agrees, as I do, that the remaining proof was unworthy of belief. Thus there is simply no credible basis for assuming that half of the total was transferred to Cannon, or that the remaining half was retained by Ash. My concern with affirming their decision to "divide the baby" is that I cannot discern any good reason for disregarding the probative evidence which was developed in favor of an "equitable" solution which has no factual foundation. With deference, I suggest that the proper resolution of this controversy would be to remand to the Tax Court for an allocation of $12,000 to Cannon and $52,680 to Ash.
 
 
 
 [1]
 "A whipsaw situation occurs in the tax field when two different taxpayers take positions with respect to a particular transaction which are so inconsistent with each other that only one should logically succeed and yet, because of jurisdictional or procedural reasons, first one and then the other prevails against the Government." Remarks by Phillip R. Miller at Court of Claims Judicial Conference, October 14, 1971, on Whipsaw Problems in Tax Cases, 25 The Tax Lawyer 193 (1972)
 
 
 [2]
 I agree that Cannon's asserted defenses of payment of the tax and a bribe expense to discount his liability are both totally meritless