Andrew GERARDO, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 76–1825.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1977.

Decided March 18, 1977.

Edwin Fradkin, John J. O'Toole, Starr, Weinberg & Fradkin, Newark, N.J., for appellant.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Ann Belanger Durney, Gilbert S. Rothenberg, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before ALDISERT and GARTH, Circuit Judges, and McCUNE,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Appellant Andrew Gerardo appeals from a decision of the United States Tax Court determining deficiencies in income tax due for the taxable years 1966 and 1967 based upon unreported income from illegal gambling activity in Newark, New Jersey. Specifically, we are called upon to determine whether the evidence supports the Tax Court's finding that Gerardo received income from a lottery operation from April 4, 1966 through February 3, 1967, and whether the Tax Court erred in upholding the Commissioner's decision to assess appellant on the entire income of the gambling operation. Although we uphold the Commissioner's issuance of alternative deficiency assessments [1] for the total tax due, we have determined that no evidence supports the Tax Court's finding that Gerardo was involved in the lottery operation during the entire period covered by the deficiency assessment. We therefore reverse.

### I.

During the years in issue, Andrew Gerardo was the controlling officer of two related corporations engaged in trucking and

---

* Honorable Barron P. McCune, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The Commissioner also assessed each of two other individuals on the entire income of the same gambling operation.

excavation activities. He maintained no checking account and dealt almost exclusively in cash.

From August 5, 1966 through February 3, 1967, the Internal Revenue Service conducted an undercover investigation of an illegal lottery operation in the north Newark area. Surveillance activities focused on various small, retail establishments as well as on persons who frequented such establishments. In addition, Special Agent Germano of the Internal Revenue Service, posing as a bettor, frequented the Ben Thomas luncheonette where he observed the workings of the operation, and where he gained the confidence of Joe Cipriano, a member of that organization.

The Tax Court, in its opinion, made the following findings (among others), all of which are supported by the evidence:

In the course of his undercover surveillance, respondent's agent [Germano] frequented a certain dining establishment known as the Ben Thomas luncheonette, a frequent meeting place of several of the conspirators. There respondent's agent placed bets regularly, with Joseph Cipriano, a convicted co-conspirator who accepted and recorded bets for the organization.[3]

[3] In all, the agent placed a total of 68 bets. 34 T.C.M. 1480, 1481 (1975).

Respondent's agent gained the confidence of Cipriano who freely discussed the operation with the agent and told him that petitioner [Gerardo] was third in the chain of the organization's command. Cipriano further informed the agent that the organization was extremely prompt in paying winning bettors, that petitioner was responsible in this capacity and could be consulted should a problem arise.

Petitioner was a regular visitor to the luncheonette and was observed there by respondent's agent on at least thirteen occasions. Respondent's agent placed bets with Cipriano in petitioner's presence. Petitioner was frequently observed as party to discussions concerning wagering operations. On one occasion respondent's agent overheard petitioner inform the alleged chief of the operation that "the heat was on," and "they [the authorities] are going to give it their raid treatment."

On February 2 and 3, 1967, Special Agents of the Intelligence Division of the Internal Revenue Service obtained search warrants and conducted searches of five residences allegedly used as lottery "offices" or meeting places of the conspirators. A number of automobiles were also searched at this time.

During the raids, respondent's agents seized gambling paraphernalia in the form of betting slips comprising the recorded daily tallies of each of the group's bet recorders for three days' operation.

An analysis of the seized slips revealed a correlation showing that slips seized from the several different locations were part of a single wagering operation.

On the basis of the seized evidence and the surveillance activities, in 1969, Gerardo and eighteen others were convicted of conspiracy to operate a lottery between August 5, 1966 and February 3, 1967, in a New Jersey state court prosecution.[2]

On June 23, 1972, the Commissioner of Internal Revenue, having determined deficiencies for the years 1966 and 1967 in the amount of $899,249.63 plus fraud penalties of $449,624.81 (totalling $1,348,874.44), forwarded a Notice of Deficiency to Gerardo.[3] Deficiencies arising from the same wagering activities and in the same amount were also assessed against two other individuals.[4]

---

2. *See* N.J.Stat.Ann. 2A:112–3, 2A:121–3. Gerardo's conviction was upheld on appeal. *See State v. Boiardo*, 111 N.J.Super. 219, 268 A.2d 55 (App.Div.), *certif. denied*, 57 N.J. 130, 270 A.2d 33, *cert. denied*, 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971).

3. Included in the deficiency assessment was $1600 representing commission income and an adjustment of $121.51 affecting the "standard deduction." Neither of these items are related to the income from wagering activities or this appeal and are therefore not questioned here.

4. At the hearing of May 8, 1974 before the Tax

The gambling deficiencies were computed in the following manner: from the betting slips seized on February 2 and 3, 1967, the Commissioner determined the average daily gross receipts of the lottery operation. The Commissioner then projected that amount over the period from April 4, 1966 (four months prior to the commencement of the undercover investigation) through February 3, 1967, and, assuming net profits equal to 30% of the gross wagering receipts, calculated that Gerardo received gambling income, not reported in his returns, in the amount of $1,167,443.55 in 1966 and $139,-694.10 in 1967.

Gerardo petitioned the Tax Court for a review of the deficiencies and penalties assessed by the Commissioner. The Tax Court upheld the Commissioner's determination in all respects except that it reduced the percent figure used by the Commissioner in determining the lottery's net profit from 30% to 20%, thereby reducing Gerardo's tax liability.[5]

## II.

■■■ We begin by noting the appropriate standards of review. In the Tax Court, the Commissioner's determination carries a presumption of correctness, see Baird v. Commissioner of Internal Revenue, 438 F.2d 490, 492 (3d Cir. 1971), and the taxpayer has the burden of proving that determination "to be arbitrary (i. e., without rational foundation in fact and based upon unsup-

ported assumptions). . . . ." Harry Gordon, 63 T.C. 51, 73 (1974), modified, 63 T.C. 501 (1975) appeal pending; see Baird v. Commissioner of Internal Revenue, supra at 492. On appeal, our scope of review "is limited by the general principle that all findings of facts made by the Tax Court and all inferences drawn by it from these facts are binding on the appellate courts unless 'clearly erroneous.' " Costantino v. Commissioner of Internal Revenue, 445 F.2d 405, 407 n. 5 (3d Cir. 1971). By the same token, "[o]nce the method of [reconstructing a taxpayer's income] is found acceptable the Tax Court's factual findings in the course of applying that method must be upheld unless clearly erroneous." [6] Agnellino v. Commissioner of Internal Revenue, 302 F.2d 797, 799 (3d Cir. 1962).

Gerardo, however, argues that the evidence does not support the Tax Court's finding of his involvement in the lottery operation during the period covered by the assessment. Therefore, he contends that the Commissioner's deficiency assessment for the period from April 4, 1966 through February 3, 1967 was arbitrary and the Tax Court's finding was "clearly erroneous."

■■■ Gerardo's argument with respect to the period August 5, 1966 through February 3, 1967 is unpersuasive. First, Agent Germano's testimony, his personal observations, his activities and his conversations with Cipriano, all during this period, provide ample support for the Tax Court's

Court, counsel for the Commissioner stated, ". . . we are prepared to stipulate that there have been deficiencies assessed against two other individuals [participants in the conspiracy] and that these deficiencies in fact, remain outstanding and there has been no payment on them." Transcript at 7, 12.

**5.** Neither party has challenged this determination on appeal.

**6.** Appellant contends that the formula used by the Commissioner was arbitrary and without rational foundation. Since appellant kept no records, however, "it was proper and indeed necessary to devise some substitute method for reconstructing income." See Agnellino v. Commissioner, 302 F.2d 797, 799 (3d Cir. 1962).

Where unreported income from gambling is at issue, the projection of average daily gross receipts over a period of time in order to calculate gross income is an acceptable method of reconstruction. See Mitchell v. Commissioner of Internal Revenue, 416 F.2d 101, 103 (7th Cir. 1969), cert. denied, 396 U.S. 1060, 90 S.Ct. 757, 24 L.Ed.2d 754 (1970), aff'g 27 T.C.M. 670 (1968); Fiorella v. Commissioner, 361 F.2d 326 (5th Cir. 1966), aff'g Shades Ridge Holding Co., 23 T.C.M. 1665 (1964). Furthermore, Gerardo failed to sustain his burden of producing evidence which would have obviated the use of the Commissioner's formula. Therefore, we have concluded that the Tax Court did not err in approving the Commissioner's method of reconstruction.

findings.[7] Second, the observations made by agents other than Germano add additional substantiation to the wagering activities of Gerardo during this time. Finally, Gerardo's indictment and conviction (with others) of conspiracy to violate New Jersey's criminal wagering statutes between the same dates August 5, 1966 and February 3, 1967, with no mitigating explanation afforded, give substantial content to the Tax Court's finding that he was involved in wagering activities during this period.

In the Tax Court, Gerardo's only attempt to meet his burden of rebutting the Commissioner's evidence consisted of self-serving denials of his involvement. The Tax Court, in concluding that Gerardo had realized substantial income from the gambling operations during this period and that he had failed to report this income, did not give and need not have given credence to Gerardo's testimony. *See Simon v. Commissioner of Internal Revenue*, 285 F.2d 422, 424–25 (3d Cir. 1960).

█ While we fully approve the Tax Court's findings and conclusions as they pertain to the period August 5, 1966 through February 3, 1967, we are troubled by the extent of the Tax Court's determinations which reach back beyond August 5, 1966 to attribute income to Gerardo from the date of April 4, 1966 up to February 3, 1967. Our concern here is that no evidence appears in the record which links Gerardo to the gambling operation during the period April 4, 1966 through August 5, 1966.

We observe that "the absence of adequate tax records [as in the case here] does not give the Commissioner carte blanche for imposing Draconian absolutes." *See Webb v. Commissioner of Internal Revenue*, 394 F.2d 366, 373 (5th Cir. 1968). Furthermore, where the Commissioner issues a "naked" assessment, his determination of tax due

may be " 'without rational foundation and excessive,' and not properly subject to the usual rule with respect to the burden of proof in tax cases." *See United States v. Janis*, 428 U.S. 433, 441, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976).

In *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1970), the Second Circuit considered a situation involving an assessment of gambling income where no rational foundation for the assessment had been established. *Pizzarello* involved a suit to enjoin the levy of a jeopardy assessment. There, Pizzarello, the taxpayer, was arrested on April 15, 1965 and charged with operating a bookmaking establishment from March 30, 1965 through April 15, 1965. Following a dismissal of the criminal charges due to his illegal arrest, the Commissioner issued an assessment for the period from April 1, 1960 through April 15, 1965, based on a formula identical to the formula employed in the instant case. Pizzarello produced no records to contradict the Commissioner's assessment. Nevertheless, the Second Circuit held that the assessment was excessive, arbitrary and without factual foundation, declaring:

> there is no proof in the record before us that Pizzarello operated as a gambler for five years . . .. No court could properly make such inferences without some foundation of fact.

*Id.* at 583. In further support of its ruling, the court cited the fact that Pizzarello's indictment covered only the period from March 30, 1965 through April 15, 1965, and "notwithstanding the Government's assertion that there is substantial evidence of an extensive gambling operation here, at his trial evidence of gambling activity was limited to a period of only slightly over two weeks." *Id.* at 584.

---

7. Gerardo argues that the out-of-court statements of Joe Cipriano, deceased at the time of trial, constituted inadmissible hearsay and should have been excluded. We have considered this contention and agree with the Tax Court, 34 T.C.M. 1480, 1482–3 (1975), that the statements were made while the conspiracy was continuing and in furtherance of the conspiracy. Hence, the statements were admissible under the exception to the hearsay rule for declarations of a co-conspirator offered against another co-conspirator. *See Anderson v. United States*, 417 U.S. 211, 218, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Weber*, 437 F.2d 327, 336 (3d Cir. 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971).

Here, the record of the proceedings before the Tax Court contains only one reference to the April 4 assessment date. An IRS special agent testified that:

> On April 4, 1966, the Essex County Prosecutor's Office conducted a raid on a residence in the north Newark area and at that time, they seized a large volume of bet slips contained in a brown paper bag or several brown paper bags and I compared the bet slips, that is the envelopes and the slips that were seized by the prosecutor to the ones that were seized by us and found that the codes, most of the codes corresponded with the codes that were found on the slips—envelopes that we found. Also, we found that there were—several people were arrested by the prosecutor's office at that time who were observed to be in the operation that we investigated. *So, we took as a beginning date, the date that the Essex County raid was conducted.* (Emphasis added.)

Transcript at 101–02. Our independent search of the record reveals no other "evidence" which could conceivably support an inference that Gerardo was involved in these activities and this lottery on April 4, 1966 continuing thereafter to August 5, 1966.

The raid conducted by the prosecutor's office of Essex County on April 4, 1966 disclosed no link to Gerardo nor did it reveal his participation in that lottery. Gerardo was not observed at that time, and no other investigation which implicated Gerardo took place between April 4 and August 5. The codes on the April 4 betting slips, even though identical to those on the February 3 betting slips, do not, without more, identify Gerardo's involvement. Of even greater significance, Gerardo's indictment and conviction by the state authorities who

were in possession of the April 4, 1966 evidence embraced *only* the period between August 5, 1966 and February 3, 1967. Finally, even if we were to accept the Commissioner's assertion that the lottery observed by the IRS in August, 1966 was the same lottery as that being conducted in April, 1966, the evidence in the Tax Court of *Gerardo's* gambling activity, as distinct from unidentified gambling operations, was limited to the period from August 5, 1966 through February 3, 1967.

We are obliged to conclude therefore that, absent proof in the record that Gerardo was involved in gambling activities from April 4, 1966 through August 5, 1966, no court could properly draw an inference of such involvement.[8] *See Pizzarello v. United States, supra* at 583.

The Tax Court made no specific findings with regard to the April 4 starting date and apparently relied on the Commissioner's presumption of correctness and Gerardo's failure to present evidence in rebuttal. Here, in order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in gambling activity during the period covered by the assessment. Without that evidentiary foundation, minimal though if may be, an assessment may not be supported even where the taxpayer is silent. *See Pizzarello v. United States, supra* at 583.

While we realize the difficulties which the Commissioner encounters in assessing deficiencies in circumstances such as are presented here, we nevertheless must insist that the Commissioner provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be given his presumption of correctness. Here, the

8. Gerardo's case is readily distinguishable from other cases in which the Commissioner's "reconstructions" have been upheld, *e. g., Pinder v. United States,* 330 F.2d 119, 124–25 (5th Cir. 1964); *Hamilton v. United States,* 309 F.Supp. 468, 472–73 (S.D.N.Y.1969), *aff'd,* 429 F.2d 427 (2d Cir. 1970), *cert. denied,* 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971); *Shades Ridge Holding Co.,* 23 T.C.M. 1665, 1675–76 (1964), *aff'd, Fiorella v. Commissioner of Internal Revenue,* 361 F.2d 326 (5th Cir. 1966). In each of those cases, there was an independent evidentiary basis for the Commissioner's determination that the taxpayer was involved in gambling activity during the period covered by the assessment.

record is barren of that underlying evidence relating Gerardo to wagering operations between April 4, 1966 and August 5, 1966. The Tax Court, having impermissibly drawn an inference of his involvement during that period without factual foundation must therefore be reversed as to this segment of its holding. Gerardo may therefore be assessed only with gambling income from August 5, 1966 through February 3, 1967, the period of his involvement as revealed by the record.

### III.

Having concluded that Gerardo received lottery income from August, 1966 through February, 1967, which he did not report we must next consider his argument concerning "inconsistent, alternative assessments."

The Commissioner in addition to assessing Gerardo for the entire tax deficiency, also assessed the same income tax deficiency to two other individuals involved in the lottery operation. Gerardo contends that such inconsistent, alternative deficiency notices constitute error as a matter of law and that, in any event, there was an insufficient factual basis to justify his being assessed for the entire proceeds of the gambling operation during the period in which the Commissioner claims he was involved. We do not agree.

It is established that "pending collection of taxes alleged to be due, the Service is permitted to assert inconsistent positions and to assess deficiencies against more than one person for the same tax liability if there is an accepted legal basis for each assertion." *Stone v. United States*, 405 F.Supp. 642, 649 (S.D.N.Y.1975), *aff'd*, 538 F.2d 314 (2d Cir. 1976); *accord, Wiles v. Commissioner of Internal Revenue*, 499 F.2d 255, 259 (10th Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974); *Estate of Goodall*, 391 F.2d 775, 782–84 (8th Cir.), *cert. denied*, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968). The practice is grounded in the Commissioner's need to protect the revenue and avoid a windfall for a delinquent taxpayer. *See Estate of Goodall*, 391 F.2d at 782. In *Goodall*, then Judge (now Mr. Justice) Blackmun, although concerned there with estate rather than income taxes, wrote:

> These are, after all, tax cases. Substantial sums are involved. The Commissioner is charged with the protection of the revenues. While these factors might be viewed as pragmatic, it would be unseemly, we feel, to force the Commissioner, in the performance of his administrative duties, to make an awesome choice of this kind at his peril. Taxes are not a game. Of course, the Commissioner, and the government itself, in this court is no more and no less than just another litigant. But we are aware of every person's tax responsibilities and we are not inclined to let the realization of revenues stand or fall on so technical a base as impeccable consistency. Consistency is desirable but its virtue has limits. Good faith inconsistency buttressed by acceptable argument, when considered in the framework of the Commissioner's responsibilities, cannot be regarded as an offense which provides a bar to bona fide tax litigation.

*Id.* at 782–83.

It has also been stated that the Commissioner has the right to make inconsistent assessments so as to protect the public fisc and "insure against a potential 'whipsaw' effect." *Cannon v. Commissioner of Internal Revenue*, 533 F.2d 959, 962 (5th Cir. 1976) (Clark, J., dissenting). Judge Clark, dissenting in *Cannon*, explains how that "whipsaw" effect occurs:

> "A whipsaw situation occurs in the tax field when two different taxpayers take positions with respect to a particular transaction which are so inconsistent with each other that only one should logically succeed—and yet, because of jurisdictional or procedural reasons, first one and then the other prevails against the Government." Remarks by Phillip R. Miller at Court of Claims Judicial Conference, October 14, 1971, on Whipsaw Prob-

lems in Tax Cases, 25 The Tax Lawyer 193 (1972).

*Id.* at 962 n.1.

Here, the Commissioner, relying on these concepts, has additionally taken the position that:

> If the Commissioner had asserted a deficiency only against taxpayer here, the statute of limitations might well have run with respect to those other individuals possibly liable for the additional tax. So to protect the revenue, the Commissioner, based upon long-standing and well-established precedent, issued alternative deficiency notices in the instant case. And the issuance of such notices does not mean that the income tax due from the operation of the lottery will be collected more than once, for the Commissioner's counsel noted in his opening statement in the Tax Court that only one income tax liability was due.

Appellee's Brief at 28.

 Recognizing that none of the deficiencies asserted has yet been collected and that the Commissioner acknowledges that only one tax liability is due, we are satisfied that the Commissioner's procedures, as employed here, were valid.

Gerardo's final contention that there was an insufficient factual basis upon which to attribute the entire proceeds of the lottery to him, is equally without merit. The record reveals sufficient evidence that, at least from August 5, 1966 through February 3, 1967, Gerardo held a controlling position in the lottery operation. That evidence suffices to give effect to the presumption of correctness of the Commissioner's determination. As the Commissioner points out, Gerardo's argument that he should not be assessed with the entire tax as he was not the "boss" misses the mark. Appellee's Brief at 28. It is not incumbent upon the Commissioner to show that no one except Gerardo received the lottery profits. Rather, it was Gerardo's burden to prove that others and not he alone shared the lottery proceeds. Gerardo, however, failed to sustain this burden. He presented no credible evidence to meet the Commission-

er's presumption, and we therefore conclude that the Tax Court did not err in sustaining the assessment of the entire lottery proceeds to Gerardo. *See Cannon v. Commissioner of Internal Revenue,* 533 F.2d 959, 961 (5th Cir. 1976); *cf. United States v. Stayback,* 212 F.2d 313, 317 (3d Cir. 1954).

IV.

Having concluded that the Commissioner's determination and assessment was correct in all respects, other than for the period of April 4, 1966 through August 5, 1966, we will affirm the February 17, 1976 decision of the Tax Court in part, reverse in part, and remand for further proceedings consistent with this opinion.