RAUL LAZCANO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lazcano v. Commissioner
Docket No. 26586-84.
United States Tax Court
T.C. Memo 1988-81; 1988 Tax Ct. Memo LEXIS 113; 55 T.C.M. (CCH) 247; T.C.M. (RIA) 88081; February 29, 1988. *113 Raul Lazcano, pro se. Theresa E. Mitchell, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: By notice of deficiency dated April 23, 1984, respondent determined a deficiency in petitioner's 1978 Federal tax liability in the amount of $ 38,481.58, an addition to tax under section 6653(a)(1) [1] in the amount of $ 1,924.08 and an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on $ 38,481.58. The issues for decision are whether petitioner failed to report commissions received from money laundering, and, if so, whether petitioner is liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. At the time of filing the petition in this case, petitioner resided in Miami, Fla. He timely filed a Federal income tax return for 1981 with the office of the Internal *114 Revenue Service in Philadelphia, Pa., declaring gross income from commissions earned in the amount of $ 6,800. During the period April, 1980 through August 4, 1981, petitioner was one of the targets of a Federal Bureau of Investigation (FBI) undercover operation known as Operation Bancoshares. Operation Bancoshares established a storefront investment counseling business in Miami known as C.R.V. Associates (C.R.V.). The real purpose of C.R.V. was to identify narcotics proceeds, assets, and the persons involved in the laundering of drug proceeds. C.R.V. was engaged in the business of laundering money, and accepted only referral business relating to narcotics trafficking proceeds. The FBI had four special agents working undercover during the course of Operation Bancoshares. Their real names and undercover identities were: Tony Franco, a/k/a Tony Fernandez; Robert Cassidy, a/k/a Bobby Carr; Susan Gaffney, a/k/a Susan Davis; and Claudio Gonzales, a/k/a Claudio Guzman. The administrative case agent was Special Agent Richard Moelke. Between February 17, 1981 and August 3, 1981, petitioner visited C.R.V. Associates 72 times. Petitioner was introduced by Elias Facuseh, [2] another *115 individual who laundered money through C.R.V. Petitioner used the names Raul Sandoval and Pedro El Grande when doing business at C.R.V. Petitioner brought a total of $ 18,292,417 in U.S. currency to be exchanged for financial instruments or wire transfers. This money did not belong to petitioner; he was merely a courier. Petitioner brought the money in his briefcase, shopping bags, cardboard boxes, show boxes and suitcases. Each transaction was videotaped by a hidden camera and contemporaneously recorded in a logbook maintained by Special Agent Gaffney. Petitioner paid C.R.V. one-half of one percent of the amount to be exchanged as a fee. The fee was paid by petitioner in cash at or near the time of each transaction. Petitioner spent anywhere from a few minutes to several hours at C.R.V. when he brought money to be exchanged. During that time he talked with Special Agents Franco and Gaffney and made statements about the people he worked with and the commissions he earned. Some of his remarks included statements he later admitted were lies, such as boasts that he was a doctor and that he owned a leather *116 factory in Italy and hotels in Venezuela. During one visit petitioner told Special Agent Franco that he had traveled to Texas to pick up the money he was exchanging, and that he had received a five percent commission for transporting the money. He then took another two percent as a commission for exchanging the money. Petitioner also stated that another courier he knew was getting a three percent commission. When petitioner brought money in to C.R.V. to be exchanged for a wire transfer or check, he would know the amount he was supposed to be carrying but would not have actually counted the cash. If there turned out to be a slight shortage, petitioner would reach into his pocket or into another bundle of cash and make up the shortage. If there was an overage, he pocketed the extra cash. At times the overages were thousands of dollars. Petitioner kept no records of the amounts pocketed on these occasions. On or about July 31, 1981, petitioner was indicted by the Grand Jury for the United States District Court of the Southern District of Florida for violations of Title 18 and 21 of the United States Code. Petitioner pled guilty to one count of the indictment charging him with *117 cocaine distribution under 21 U.S.C. section 841(a)(1) (1982). He was acquitted of other narcotics and money laundering charges after a jury trial. On his 1981 tax return, petitioner reported income of $ 6,800 from commissions. During 1981, petitioner paid rent on an apartment in the amount of $ 600 per month, and owned two cars, one of which was a 1976 Corvette. Respondent determined that petitioner actually received $ 82,332 in commissions and that the deficiency in tax was subject to the addition to tax for negligence. OPINION In the usual case, respondent's determination of the deficiency in tax is presumed correct, Welch v. Helvering,290 U.S. 111 (1933), and the burden is upon petitioner to prove that he is not liable for the deficiency and addition to tax. Rule 142(a). However, where the notice of deficiency is found to be arbitrary, the burden of going forward with the evidence may be shifted to respondent. Helvering v. Taylor,293 U.S. 507 (1935); Suarez v. Commissioner,58 T.C. 792, 813 (1972). This exception to the general rule has been applied in cases involving unreported income from *118 illegal activities. See Dellacroce v. Commissioner,83 T.C. 269, 287 (1984); Jackson v. Commissioner,73 T.C. 394, 401-405 (1979). Respondent must come forward with evidence linking petitioner to the income-producing activity. Walker v. Commissioner,757 F.2d 36 (3d Cir. 1985), revg. and remanding a Memorandum Opinion of this Court. Gerardo v. Commissioner,552 F.2d 549 (3d Cir. 1977), affg. in part, revg. in part and remanding a Memorandum Opinion of this Court. In this case, there is ample evidence linking petitioner to money laundering. In addition to the testimony, videotapes and logbook of the FBI agents involved in Operation Bancoshares, petitioner himself admitted involvement in the operation. Although it is not disputed that petitioner was merely a courier and not a principal, we find that he was sufficiently linked to the activity for respondent's burden of going forward to be satisfied. Petitioner thus must come forward with evidence and meet his ultimate burden of proving that he is not liable for the deficiency and addition to tax. We find that he has not met this burden. Respondent determined *119 that petitioner earned $ 82,332 in commissions from money laundering, or less than one-half of one percent commission on the amount laundered. In support of this determination, the FBI Special Agents involved in the case testified that petitioner often pocketed large sums of money during his visits to C.R.V., took a 2 percent commission on one occasion, [3] and stated that he had earned a 5 percent commission for transporting money. The FBI administrative case agent, who was familiar with Operation Bancoshares, testified that the customary and reasonable compensation for laundering these sums of money would be 1 percent, paid off the top upon receipt and delivery. Petitioner denies having received commissions. He testified that he was to receive one quarter of one percent of the money as a commission, but it would not be paid until the end of the year. Since he was arrested in August, he never received anything. He stated *120 that the amounts he occasionally pocketed were used to make up shortages at other times and to pay the personal expenses of Turi Fernandez, the true owner of the money. Petitioner further stated that he lived off his earnings as a locksmith. [4]
We find petitioner's testimony to be incredible. We cannot believe that an individual would be involved in the illegal laundering of large sums of money and not receive a commission at the time of each transaction. We also note that petitioner owned two cars during 1981, one of them an expensive sportscar, and paid high rent on an apartment, none of which could have been afforded on the $ 6,800 income he reported on his return. We are not required to accept petitioner's uncorroborated, self-serving testimony. Christensen v. Commissioner,786 F.2d 1382, 1384 (9th Cir. 1986); Tokarski v. Commissioner,87 T.C. 74, 77 (1986), Jackson v. Commissioner, supra at 399-400. *121 On the record before us, we find that petitioner has not met his burden of proof as to respondent's determination of deficiency, and we sustain that determination. Petitioner also bears the burden of proof as to the addition to tax for negligence under section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Petitioner did not offer any evidence tending to refute negligence in the preparation of his 1981 return. The evidence shows that petitioner reported $ 6,800 in commissions while in fact he earned $ 82,332. Such a large discrepancy can hardly be due to oversight. Further, petitioner kept no records of his money-laundering activities. These facts tend to indicate negligence. See Brennen v. Commissioner,T.C. Memo. 1967-239. We find that petitioner has not met his burden of proof, and we sustain respondent's determination. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. See Facuseh v. Commissioner,T.C. Memo. 1988-10↩. 3. The videotape of petitioner's April 7, 1981 visit to C.R.V., viewed by the Court, clearly shows petitioner taking a 2 percent ($ 11,246.00) commission for exchanging $ 562,315. Petitioner paid C.R.V. its fee ($ 2,811.57) out of his 2 percent commission. ↩
4. Although petitioner claimed that he was a locksmith, he reported no income from the business nor any wage income on his 1981 tax return. The $ 6,800 income reported was termed "commissions earned" and the source of this income is not apparent from the return. ↩