T.C. Memo. 2000-110


UNITED STATES TAX COURT


RICHARD AND REBECCA ADAIR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12103-97, 20465-97.    Filed March 30, 2000.


Rebecca Adair, pro se.

<u>Linda K. West</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes and fraud penalties as follows:

|       |            | Fraud Penalty |
| ----- | ---------- | ------------- |
| Year  | Deficiency | Sec. 6663     |
| 1993  | $192,142   | $144,107      |
| 1994  | 185,261    | 138,946       |
| 1995  | 123,633    | 92,725        |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision involve the amount of unreported income that should be charged to petitioners and petitioners' liability under section 6663 for the fraud penalty. Hereinafter all references to petitioner are to Rebecca Adair.

FINDINGS OF FACT

Because petitioners failed to respond to respondent's requests for admission, factual matters set forth in respondent's requests for admission are deemed admitted. See Rule 90(c).

When the petition was filed, petitioners resided in Clinton, Louisiana. Petitioners and Delwin Houser, Rebecca Adair's step-father, operate a roofing business known as H & H Sheet Metal (the roofing business). The evidence does not establish how ownership of the roofing business is divided between petitioners and Delwin Houser.

Payments were received by the roofing business for roofing services rendered for various general contractors, including Roof Technologies and Vaughn Roofing.

In 1993, 1994, and 1995, Roof Technologies and Vaughn Roofing were billed by the roofing business the following total amounts for roofing services rendered to them:

| Year | Amount |
|------|--------|
| 1993 | $490,009 |
| 1994 | 426,843 |
| 1995 | 197,965 |

Roof Technologies and Vaughn Roofing issued checks in favor of Delwin Houser that cumulatively total the above amounts billed to them by the roofing business.  The checks were received and deposited into a checking account (the checking account) on which Delwin and Carol Houser and Rebecca Adair were signatories.

For 1993, 1994, and 1995, the following schedule reflects monthly and annual total deposits into the above checking account:

| Month | Total Deposits Into Checking Account | | |
|---|---|---|---|
| | 1993 | 1994 | 1995 |
| January | -0- | $ 21,346 | $ 10,533 |
| February | $ 28,154 | 34,950 | 19,056 |
| March | 25,824 | 12,150 | 23,104 |
| April | 37,400 | 53,022 | 18,000 |
| May | 20,131 | 44,211 | 21,372 |
| June | 48,870 | 55,007 | 61,050 |
| July | 34,149 | 37,700 | 49,146 |
| August | 33,038 | 17,577 | 670 |
| September | 52,000 | 53,619 | 24,465 |
| October | 91,020 | 51,291 | 51,946 |
| November | 72,000 | 56,580 | 17,492 |
| December | 65,150 | 40,450 | 34,500 |
| Total | $507,736 | $477,903 | $331,334 |

On November 16, 1993, for a stated purchase price of $73,000, petitioners purchased a residence in Clinton, Louisiana. In their purchase of the residence, petitioners paid $49,205 in cash and obtained a mortgage of $25,000.

On a loan application dated July 2, 1994, Richard Adair indicated that his monthly salary from the roofing business was $3,200. On a loan application dated March 15, 1995, Richard Adair indicated that his weekly salary from the roofing business was $800.

For 1993, 1994, and 1995, petitioners filed joint Federal income tax returns on which they reported the following amounts:

| | Wages, Salaries, | Schedule C for the Roofing Business | | Reported |
| Year | and Tips | Gross Receipts | Business Expenses | Income |
|------|-----------|----------------|-------------------|--------|
| 1993 | $10,905 | – | – | $10,905 |
| 1994* | 1,400 | $21,729 | $22,707 | 10,422 |
| 1995 | 1,535 | 52,359 | 26,763 | 10,193** |

\* For 1994, on a Schedule C-EZ relating to a separate contracting business, Richard Adair reported $10,000 as construction gross receipts with no expenses reported.

\*\* For 1995, total reported income includes $19 of interest income.

On petitioners' Schedule C, for the roofing business for 1994, petitioners listed Rebecca Adair as owner of the roofing business. On petitioners' Schedule C for the roofing business for 1995, petitioners listed Richard Adair as owner of the roofing business.

During respondent's audit, petitioners did not cooperate with respondent's agents, and petitioners did not provide to respondent's agents the books and records relating to the roofing business. Also, petitioners mailed to respondent letters reflecting frivolous tax protester arguments.

On audit and in the notices of deficiency for the years in issue, using the bank deposits method of proof and the specific item method of proof for interest income earned on the checking account balance, respondent determined that petitioners received unreported taxable income in the following total amounts:

| Year | Amount |
|------|--------|
| 1993 | $517,236 |
| 1994 | 477,903 |
| 1995 | 333,780 |

Respondent allowed petitioners' business deductions for the roofing business that were claimed on petitioners' joint Federal income tax returns.

Respondent also determined, for each year, that petitioners were liable for the fraud penalty under section 6663. In the alternative, for each year, respondent determined that petitioners were liable for the accuracy-related penalty under section 6662.

As a protective measure, on audit of Delwin Houser for 1993, 1994, and 1995, respondent charged to Delwin Houser the same total amounts of unreported income relating to the bank deposits that were charged to petitioners.

OPINION

Under section 61, gross income includes all income from whatever source derived. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Taxpayers are required to maintain sufficient records to allow respondent to determine their correct Federal income tax liability. See sec. 6001.

Generally, respondent's determinations are presumed correct, and taxpayers have the burden of proving that respondent's

determinations are erroneous.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Generally, bank deposits are treated as prima facie evidence of taxable income.  See <u>Woodall v. Commissioner</u>, 964 F.2d 361, 364 (5th Cir. 1992), affg. T.C. Memo. 1991-15; <u>Parks v. Commissioner</u>, 94 T.C. 654, 658 (1990); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

Where taxpayers fail to present evidence regarding the proper division between them of income received from a jointly operated business, respondent and the courts may approximate the amount of income to be charged to each taxpayer.  See <u>Arouth v. Commissioner</u>, T.C. Memo. 1992-679.  An equal division of income may be appropriate where taxpayers fail to provide any evidence of a more appropriate division of the income.  See <u>Cannon v. Commissioner</u>, 533 F.2d 959, 960 (5th Cir. 1976), affg. <u>Ash v. Commissioner</u>, T.C. Memo. 1974-219; <u>Puppe v. Commissioner</u>, T.C. Memo. 1988-311.

Where evidence exists that taxpayers incurred expenses relating to their business, it may be appropriate to allow an estimate of the business expenses.  See <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985); <u>Sherrer v. Commissioner</u>, T.C. Memo. 1999-122.

For 1993, 1994, and 1995, IRS Publication 1136, Statistics of Income Bulletin, reflected the following average net profit margins for roofing contractors:

| Year | Average Net Profit Margins |
|------|------|
| 1993 | 20% |
| 1994 | 25% |
| 1995 | 18% |

As indicated, respondent's tax deficiencies determined against petitioners are based on deposits to the checking account with no allowance for labor and material costs which obviously were incurred in the roofing business. We conclude that for each year it is appropriate to apply to the checking account deposits that are specifically identifiable as gross receipts of the roofing business (namely, those deposits that represent the checks received from Roof Technologies and Vaughn Roofing) the average net profit margin established by respondent for roofing contractors and to allow estimated business expense deductions for the business expenses so calculated.

Petitioners have presented no evidence as to how the income from the roofing business should be divided between them and Delwin Houser.

At trial, Rebecca Adair was asked several times her opinion on how income relating to the roofing business and to the checking account deposits should be divided between herself, her

husband, and Delwin Houser.  Rebecca Adair was uncooperative and answered as follows:  "I would not".  "No, sir".  "It's up to you, sir",  and "--for me, I'm just--I won't offer any suggestions.  I leave it completely up to you, so--."  On the little evidence before us, we conclude that one-half of the taxable income from the roofing business is taxable to petitioners.

For each year, petitioners' income that was reported on their joint Federal income tax returns and business expenses that were allowed that relate to the roofing business are to be credited against the above income and expense figures in computing petitioners' tax liability.  In the related case of Houser v. Commissioner, T.C. Memo. 2000-111, docket Nos. 13202-97 and 20120-97, also filed this date, we charge Delwin Houser with the other half of the income relating to deposits into the checking account.

For each year in issue, our calculations of petitioners' taxable income are set forth below.  The bank deposits that are identified as gross receipts of the roofing business are multiplied by the average net profit margin for roofing contractors, producing a partial taxable income figure for the roofing business.  Added to this partial net income figure are the unidentified bank deposits to calculate total taxable income

relating to the deposits to the checking account, one-half of which is then charged to petitioners.

| Year | Bank Deposits Identified as Gross Receipts of Roofing Business | Average Net Profit Margin | Net Income of Roofing Business on Identified Bank Deposits | Unidentified Bank Deposits | Taxable Income* | One-half Charged to Petitioners |
|------|------|------|------|------|------|------|
| 1993 | $490,009 | 20% | $ 98,002 | $ 17,727 | $115,875 | $57,938 |
| 1994 | 426,843 | 25% | 106,711 | 51,061 | 157,939 | 78,970 |
| 1995 | 197,965 | 18% | 35,634 | 133,369 | 169,032 | 84,516 |

* As indicated, also included in the taxable income for each year is interest income relating to the checking account in the respective amounts of $146, $167, and $29.

For the years in issue, under section 6663(a), a penalty of 75 percent applies to the portion of an understatement of tax that is attributable to fraud. To establish fraud, respondent is required to prove that the understatement is due to fraudulent intent. See sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 959 F.2d 16 (2d Cir. 1992), affg. 96 T.C. 858, 873 (1991). Respondent has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Bagby v. Commissioner, 102 T.C. 596, 607 (1994).

Where allegations of fraud are intertwined with unreported and indirectly reconstructed income, respondent is required to establish a likely taxable source for alleged unreported income or to disprove nontaxable sources alleged by the taxpayer. See DiLeo v. Commissioner, 96 T.C. at 873; Parks v. Commissioner, supra at 661.

Indicia of fraud include:  (1) Understatements of income; (2) inadequate books and records; (3) implausible or inconsistent explanations of behavior; and (4) lack of cooperation with tax authorities.  See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994); Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).

Petitioners have not alleged any nontaxable sources of income, and the roofing business constitutes the likely taxable source of the deposits into the checking account.

With regard to fraudulent intent, the evidence establishes for each year in issue that petitioners realized significant income that they failed to report, that petitioners failed to provide to respondent's agents books and records relating to the roofing business, that petitioners failed to pay significant tax liabilities that they owed, that petitioners did not cooperate with respondent, and that petitioners made erroneous tax protester objections to the tax laws.  Respondent has proven by clear and convincing evidence petitioners' fraud in regard to their Federal income taxes.  We conclude that all of the taxable income charged to petitioners herein is attributable to fraud.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.
