STEWART L. WELCH and PATRICIA A. WELCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
WELCH v. COMMISSIONER
No. 11838-98
United States Tax Court
T.C. Memo 2002-84; 2002 Tax Ct. Memo LEXIS 87; 83 T.C.M. (CCH) 1431; March 29, 2002, Filed *87 Petitioners underreported sole-proprietorship gross receipts and were liable for accuracy-related penalties. Keith Howard Johnson, for petitioner.
Monica J. Miller, for respondent. Laro, David LARO
MEMORANDUM FINDINGS OF FACT AND OPINION
LARO, Judge: Petitioners petitioned the Court to redetermine respondent's determinations as to their 1993, 1994, and 1995 Federal income taxes. Respondent determined that petitioners were liable for the following deficiencies, accuracy-related penalties under section 6662(a), and fraud penalties under and 6663(a): [1]
Years     Deficiencies     Sec. 6662(a)     Sec. 6663(a)
_____     ____________     ____________     ____________
1993      $ 11,886         $ 251        $ 7,972
1994       13,286          441  *88        8,309
1995       15,576          94        11,255
Following respondent's concession in answer that petitioners are not liable for the fraud penalties under section 6663(a), and respondent's allegation in answer that petitioners are liable for the accuracy-related penalties under section 6662(a) as to the entire deficiencies, we decide primarily whether petitioners underreported their sole-proprietorship gross receipts by $ 33,599, $ 37,317, and $ 51,955. [2] We hold they did. We decide secondly whether petitioners are liable for the accuracy-related penalties under section 6662(a). We hold they are liable only for the amounts determined under section 6662(a) in the notice of deficiency.             FINDINGS OF FACT
Some facts have been stipulated and are so found. The stipulated facts and *89 exhibits submitted therewith are incorporated herein by this reference. When the petition was filed, petitioners resided in Jacksonville, Florida.
During the relevant years, petitioners were married and filed joint Federal income tax returns. Their 1990 through 1995 returns reported total income of $ 11,793 for 1990, a loss of $ 4,246 for 1991, and total income of $ 3,967, $ 8,370, $ 12,471, and $ 7,387 for 1992 through 1995, respectively. As to those returns, only the 1990 and 1991 returns reported wage income. The respective returns for 1990 and 1991 reported that Patricia A. Welch (Ms. Welch) had received wages of $ 14,084 and $ 210. No wage income was reported for Stewart L. Welch (Mr. Welch). Beginning in 1988, Mr. Welch's only source of income, but for the business, rental, and gambling activities discussed below, was worker's compensation payments which he received through 1990. Mr. Welch received in 1990 a $ 46,384 settlement payment as part of those worker's compensation payments.
Petitioners' primary source of income during the subject years was a cash sales business (business) that they operated at various flea market booths. Petitioners began operating the business in *90 1986, and both of them worked full-time in the business after 1991. Petitioners' 1993, 1994, and 1995 Federal income tax returns reported the business' gross income as $ 36,711, $ 38,766, and $ 27,611, respectively, and its profit as $ 8,217, $ 7,882, and $ 7,378, respectively. Petitioners' only other items of reported gross income during those three years were net rental income of $ 153 and $ 9 in 1993 and 1995, respectively, and gambling winnings of $ 5,000 in 1994.
Petitioners purchased a home in 1987 for $ 109,200 and lived there during the relevant time. The home's monthly mortgage payments were $ 826.11 in 1993, $ 804.73 in 1994, and $ 993.12 in 1995. Petitioners also owned a rental property. The rental property's monthly mortgage payment is not disclosed in the record. Interest payments on the rental property's mortgage totaled $ 4,346 in 1993, $ 4,067 in 1994, and $ 3,753 in 1995.
Petitioners were sometimes assisted in the business by their two sons, who worked for the business without pay. One son, Robert Ruth (Mr. Ruth), was born in 1972 and lived with petitioners through the first part of 1995 paying little of the household's expenses. Mr. Ruth earned little income in *91 1993 and 1994 and earned $ 15,300 in 1995.
Petitioners purchased a 1990 Mustang for Mr. Ruth in 1992. The Mustang's monthly payment was $ 235.86, and the related monthly insurance payment was approximately $ 150. Petitioners also owned and made payments on four other vehicles; to wit, a 1992 Ford Bronco, a 1994 Ford Econoline Van, a 1995 Ford Bronco, and a 1988 Chevy Van. The respective monthly payments on these vehicles were $ 235.86, $ 449.13, $ 409.07, and $ 483.83. Petitioners purchased the 1995 Ford Bronco for Mr. Ruth in 1995, making a $ 1,500 cash down payment.
Mr. Ruth received a $ 19,452 settlement payment in 1990. Petitioners used this payment mainly (if not entirely) for their business. In or about January 1990, Mr. Welch deposited $ 30,000 of his $ 46,284 settlement into his brokerage account and immediately thereafter started to withdraw and spend those funds. By 1991, an insignificant amount of the $ 30,000 remained in the account.                OPINION
1. Unreported income
During respondent's examination of the subject years, respondent applied the cash expenditures method to determine that the business' gross receipts should *92 be increased by $ 33,599, $ 37,317, and $ 51,955, respectively. Petitioners bear the burden of proving this determination wrong. [3]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The right of respondent to use the cash expenditures method to recompute income is well settled. United States v. Johnson, 319 U.S. 503, 517 (1943); Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962), affg. in part T.C. Memo. 1960-160. Under that method, the excess of a taxpayer's cash expenditures during a taxable period over his or her known sources of income for that period is taxable income, unless the taxpayer establishes that the expenditures were made from a nontaxable source of funds. DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). Petitioners contend that the excess expenditures are attributable to two nontaxable sources of funds; i.e., (1) cash on hand as of January 1, 1993, and (2) loans and gifts from family members.
*93 As to the first source, petitioners argue that they had a cash hoard of approximately $ 16,000 as of January 1, 1993. Petitioners contend that this hoard remained from the settlements received in 1990 by Messrs. Welch and Ruth. We are unpersuaded that this is so. Instead, the totality of the evidence establishes that little, if any, of the settlement funds remained as of January 1, 1993. Whereas petitioners testified to the contrary, we find that testimony uncorroborated and questionable and decline to rely on it. Neonatology Associates P. A. v. Commissioner, 115 T.C. 43, 87 (2000); see also Cannon v. Commissioner, 533 F.2d 959, 961 (5th Cir. 1976), affg. Ash v. Commissioner, T.C. Memo. 1974-219.
Nor does the record persuade us that petitioners received the alleged loans and gifts from family members. In light of the record as a whole, we find that no such loans or gifts were made to petitioners.
We sustain respondent's determination of unreported income.
2. Accuracy-related penalties
Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of an underpayment of tax attributable to negligence or disregard of rules *94 or regulations. As to the portion of the accuracy-related penalties determined in the notice of deficiency, petitioners bear the burden of proving that determination wrong. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791- 792 (1972). Respondent concedes that he bears the burden of proving the correctness of the accuracy-related penalties alleged in answer.
Negligence includes a failure to attempt reasonably to comply with the Code, and disregard includes a careless, reckless, or intentional disregard. Sec. 6662(c). An underpayment is not attributable to negligence or disregard to the extent that the taxpayer shows that the underpayment is due to the taxpayer's reasonable cause and good faith. See secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs.Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item. United States v. Boyle, 469 U.S. 241 (1985); see also Neonatology Associates P.A. v. Commissioner, supra at 98.
We hold that petitioners are liable for the accuracy- related penalties determined in the notice of deficiency. Petitioners have failed to establish that any of the related *95 underpayments were not due to their negligence or disregard of rules or regulations. As to the accuracy-related penalties alleged in answer, however, we hold for petitioners. Respondent has not met his burden of proof with respect to those amounts. E.g., Sproul v. Commissioner, T.C. Memo. 1995-207. Whereas respondent in brief recognizes that he bears the burden as to those amounts, respondent concludes erroneously that petitioners are liable for the accuracy-related penalties alleged in answer because they have failed to disprove their liability for such amounts. Respondent states:     Petitioners underreported their income for 1993, 1994, and   1995. Though their returns were prepared by a tax service,   petitioners did not present any evidence as to their return   preparer's qualifications or to show that the underreporting was   due to any act of their returns preparer or reliance upon his   advice. Moreover, they have introduced no evidence which could   serve as a basis for the Court to find that there was reasonable   cause for their underreporting. Accordingly, petitioners should   be held liable for *96 the accuracy-related penalty for 1994 [sic],   1994, and 1995, respectively.
All arguments of the parties not discussed herein have been considered and rejected as meritless. Accordingly,
Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject years, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded.↩
2. Respondent's allegation in answer as to the increased liability under sec. 6662(a)↩ relates solely to the unreported gross receipts.
3. The notice of deficiency was issued on Apr. 6, 1998. Where, as here, respondent's examination was commenced before July 23, 1998, sec. 7491(a) does not operate to shift the burden of proof to the Commissioner regarding the deficiencies, nor does sec. 7491(c)↩ place on the Commissioner the burden of production respecting the penalties. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685.