George E. ELLIS

v.

UNITED STATES of America.

No. CA 3–77–1469–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 5, 1979.

William M. Ravkind, Dallas, Tex., for plaintiff.

Kenneth J. Mighell, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., William W. Guild, David E. Tripp and Joseph Earnest, Dallas, Tex., M. Bruce Peele, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

This civil action is brought by plaintiff, George E. Ellis, for the refund of wagering excise taxes and special gambling occupational taxes and interest assessed against him and paid in part prior to bringing suit. Plaintiff contends that the federal taxes paid were erroneously assessed and collected by the defendant, United States of America. Defendant has counterclaimed, seeking judgment and collection of the unpaid amounts of the assessments. The applicable statutes involved in this action are Sections 4401, 4403, 4411 and 4412 of the Internal Revenue Code of 1954 (26 U.S.C.). Jurisdiction and venue are proper in this court.

The following facts were stipulated by both plaintiff and defendant in the Pretrial Order in this suit and the Court finds them to be true. On October 22, 1972, plaintiff was receiving or accepting wagers on sporting events on behalf of another person, who was engaged in the business of accepting wagers.

On that date, officers of various Dallas County police departments assigned to the Metro-Squad entered plaintiff's apartment at 4627 Munger Avenue No. 205, Dallas, Texas, arrested plaintiff and seized certain bet slips and summary sheets. Subsequent to the arrest, while the police officers were still in the apartment, Detective R. D. Young answered plaintiff's telephone and transcribed several wagers which the persons calling were attempting to place. On September 17, 1973, the criminal charges lodged against plaintiff by the State of Texas were dismissed. The plaintiff has never registered with the official in charge of the Dallas Internal Revenue District the name and place of residence of the person

for whom or on whose behalf he received or accepted wagers. As plaintiff has filed neither Form 730 "Tax on Wagering" nor Form 11–C "Special Tax Return and Application For Registry-Wagering," such returns were executed for him pursuant to Section 6020(b) of the Internal Revenue Code of 1954 (26 U.S.C.). Such returns reflect the following tax liability, along with penalties, statutory additions, and interest according to law:

| Period | Type of Tax | Amount of Tax |
|---|---|---|
| August, 1972 | Wagering Excise Tax (Form 730) | $19,680.00 |
| September, 1972 | Wagering Excise Tax (Form 730) | $19,045.70 |
| October, 1972 | Wagering Excise Tax (Form 730) | $14,026.80 |
| August 1, 1972 to June 30, 1973 | Wagering Occupational Tax (Form 11–C) | $ 45.83 |
| TOTAL | | $52,798.33 |

The taxes described above were timely assessed on September 24, 1974. Plaintiff subsequently paid the amounts of $1,555.95 toward the August excise tax liability and $1,055.38 toward the October excise tax liability. All wagering occupational tax assessments have been paid· in full by plaintiff. Accordingly, the total unpaid tax liability for the federal wagering taxes here in question is $50,141.77, plus statutory additions, penalties, fees, and interest thereon as allowed by law.

Plaintiff timely filed a claim for refund of $30.00 on October 26, 1976. This claim covers the period of August 31, 1972 through June 30, 1973, and raises all issues raised in this civil action. The Internal Revenue Service considered this claim as covering all tax assessments listed above and disallowed it by certified letters. Plaintiff timely filed his action for refund of the $30.00 on November 9, 1977. By counterclaim, defendant has properly put the entire amount of the assessments plus statutory additions, penalties, fees, and statutory interest thereon in issue in the present action.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 22, 1973, when plaintiff was arrested, plaintiff attempted to destroy all of his water soluble bet slips by dunking them in the sink in the apartment where he was arrested. Only a few of these bet slips survived to become evidence in this action. Plaintiff maintained no permanent books or records showing the length of time that he was in the business of accepting wagers on behalf of another person or the total amount of wagers so accepted.

The only document seized at the time of the arrest on which an assessment could reasonably be based is the weekly summary sheet for the week ending Monday, October 23, 1972. This summary sheet is in the form of a list of all significant college and professional football games played during that week and was available in blank form from a local newsstand. On this weekly summary sheet, plaintiff indicated by marks the total amount of wagers accepted on each game in hundreds of dollars. Because plaintiff was arrested on a Sunday, it can reasonably be expected that substantially more wagers would have been placed on the Monday night game prior to kickoff.

The assessments here in question were computed by Revenue Agent Wallace G. McNeil. In making his assessment, NcNeil first totalled the $100 marks on the weekly summary sheet, obtaining a total amount wagered of $40,400. To this, McNeil added the traditional "Juice" received by the bookie on those bets that he won, making the total amount wagered, pursuant to Section 4401 of the Code, at least $44,400 for the week ending Monday, October 23, 1972. Because the only summary sheet recovered was a football summary sheet, McNeil based his weekly average solely on the football bets. A $600 wager on the World Series (Cincinnati versus Oakland) was indicated on one of the salvaged bet slips, however, and so was added into the October total on a one-time only basis.

In addition, in McNeil's opinion, "because of the large volume of wagers" and "the total lack of records," McNeil reasoned that plaintiff Ellis "must have been in the business of accepting wagers on behalf of an-

other person for several months" and projected the assessment back to August 1, 1972. In this way, the total assessments that are the subject of defendant's counterclaim were computed.

At trial, plaintiff Ellis testified that when arrested he was working as a "phone man" for a Dallas bookmaker. According to Ellis, he met the bookmaker at Tennison golf course and eventually was offered $400 per week to work in the gambling business accepting wagers over the phone. Ellis accepted the offer. Subsequently, *he* leased an apartment and had a telephone installed. Both apartment and telephone were leased on or about September 15, 1972. Ellis testified that the business commenced one week later.

Ellis further testified that prior to his involvement with the bookmaker he worked as a bookkeeper and was not familiar with the gambling business. Ellis stated that during the first two weeks of the venture Ellis observed and the bookmaker operated the business. Furthermore, Ellis testified that when the business began he did not know any of the bettors and was not familiar with the bookkeeping incidental to it. The tax gatherers did not introduce any evidence to rebut Ellis' claim that the instant gambling venture was his first.

Ellis testified that after a two-week training period he performed as "a telephone man," accepted wagers and kept the requisite records. Ellis stated that his total involvement in the proscribed activity lasted two weeks during which he accepted approximately $84,000 in wagers.

Plaintiff argues that defendant's counterclaim can be sustained for the assessments made for the two-week period, but no more. The plaintiff argues that only Ellis testified about the duration of the business or his association therewith. The plaintiff asserts that the tax gatherers offered no evidence other than McNeil's opinion that the volume of business indicated by the seized paraphernalia justified the inference that the business operated as far back as August 1, 1972. The plaintiff argues that McNeil could not "guess" how long Ellis had engaged in the proscribed activity.

The validity of the Government's counterclaim as to the tax assessments computed on a three month durational period is the only issue present in this case. Moreover, this three month duration is disputed only insofar as it extends beyond the two-week period admitted by Ellis.

It is stipulated that plaintiff was a person liable for the special gambling occupational tax imposed by Section 4411 of the Code and that, because of his failure to register the name and place of residence of the person on whose behalf he was accepting wagers as required by Section 4412 of the Code, he became a person liable for the wagering excise tax imposed by Section 4401 of the Code on all wagers accepted by him. *United States v. Calamaro,* 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957); *Griffin v. United States,* 588 F.2d 521, 526–527 & 529 (5th Cir., 1979).

■ Plaintiff failed to keep a daily record showing the gross amount of all wagers which he accepted, as required by Section 4403 of the Code. See Treasury Regulations §§ 44.4403–1, 44.6001, and 44.6001–1 (26 C.F.R.). Accordingly the Commissioner of Internal Revenue, through his delegated agent, properly estimated the amount of plaintiff's tax liability and assessed that amount against him. *Griffin v. U. S.,* supra, at 530.

■ In *Carson v. United States,* 560 F.2d 693, 696 (5th Cir., 1977), the Fifth Circuit articulated the usual presumption that assessments by the Government are correct. The Fifth Circuit held that as in Tax Court deficiency proceedings, when the government attempts to collect a tax by way of counterclaim in district court the taxpayer bears "the burden of proving the assessment erroneous." The Fifth Circuit stated:

"The jurisprudence finds justification for the presumption that assessments are correct and for the taxpayer's burden of proof in the strong need of the government to accomplish swift collection of revenues and in order to encourage recordkeeping by taxpayers. See *Bull v.*

*United States*, 295 U.S. 247, 259–60, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Higginbotham v. United States*, 556 F.2d 1173, (4th Cir. 1977). The clandestine nature of gambling operations in most states and the frequent failure of bookmakers to keep records require applying the presumption of correctness to the Commissioner's reconstruction of the tax base by any reasonable method where adequate records have not been kept. See *United States v. Firtel*, 446 F.2d 1005 (5th Cir. 1971)."

Accordingly plaintiff bears the burden of proving that the assessments in question are erroneous.[1] See *Bar L Ranch Inc. v. Phinney*, 426 F.2d 995 (5th Cir., 1970).

However, as in *Carson*, supra, this court finds it unnecessary to rule on whether the plaintiff at bar has proven the Government's assessment to be erroneous, or whether as a matter of law a plaintiff also has the burden of proving the correct amount of any taxes owing. There exists a narrow exception to plaintiff's burden of proof in the case of a "naked" or "no evidence" assessment. As in *Carson*, this court finds that the government's assessment falls within "the narrow but important category noted in *Janis* of 'naked' assessment without any foundation whatsoever, . . not properly subject to the usual rule with respect to the burden of proof in tax cases.' As the Fifth Circuit stated, "the presumption of correctness notwithstanding, a wagering excise tax assessment cannot stand without some evidence tending to support an inference that the taxpayer engaged in gambling activities during the period assessed. See *Gerardo v. Commissioner of Internal Revenue*, 552 F.2d 549 (3rd Cir. 1977); *Pizzarello v. U. S.*, 408 F.2d 579 (2d Cir. 1969)."

In the case at bar the Government's assessment for the duration up to August 1, 1972, lacks that necessary foundation. The Government contends that in the present case the weekly summary sheet found for the week ending October 23, 1972, plus the stipulation that plaintiff was in the business of accepting wagers on behalf of another person prevents the characterization of the present assessments as "naked." This court does not agree.

■ There is absolutely no evidence whatsoever but Agent McNeil's speculation that "because of the large volume of wagers" during one week of the plaintiff's involvement, that the plaintiff must have been involved for at least three months. The usual presumption of correctness cannot and does not apply under these circumstances. As the Fifth Circuit stated:

"Neither tax collection in general nor wagering activities in particular, . . . have ever been thought wholly to excuse the government from providing some factual foundation for its assessments. The tax collector's presumption of correctness has a herculeon muscularity of Goliath-like reach but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact."

At another point the same *Carson* Court states: "Without [an] evidentiary foundation, minimal though it may be, an assessment may not be supported even where the taxpayer is silent." As in the *Carson* Court and under the guidelines set forth in *Gerardo* and *Pizzarello*, supra, this court finds the record "utterly lacking in evidence that would support an inference the taxpayer operated a gambling business during those months."

■ However, on the other hand, this court cannot rely entirely on the plaintiff's self-serving testimony that his wagering activities encompassed only a two-week duration. The traditional presumption of cor-

---

1. The Fifth Circuit in *Carson*, supra, noted that the Supreme Court in *U.S. v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1049 (1976) has recently noted, but did not attempt to resolve, a split in the circuits over whether in a situation where the taxpayer has shown that an assessment was erroneous, whether "the taxpayer ought not also have to prove the correct amount of any taxes owing." See *Janis*, supra, 96 S.Ct. 3026.

"We find nothing in *Janis* that casts doubt on the continuing validity of *Bar L Ranch* . . ." *Carson*, supra, at 696. But see *Griffin v. U. S.*, 588 F.2d 521 (5th Cir. 1979).

rectness of the Government's assessment, therefore, does apply in this case but not to the extent advocated by the Government. This court finds that at least minimal evidence supports the Government's assessment up to September 15, 1972, since there is unrebutted testimony that the plaintiff obtained an apartment and telephone as early as that date. There is absolutely no factual evidence linking the plaintiff to any type of gambling business before that time.[2]

Judgment is therefore rendered against the plaintiff pursuant to the Government's counterclaim for an appropriate assessment based on a duration extending from September 15, 1972, up to the week ending October 23, 1972. The Government's figures as to the weekly wagering excise taxes are accepted with these relevant dates. Of course, judgment is rendered against the plaintiff's claims.

Defendant's attorney is requested to submit an appropriate judgment pursuant to this opinion.

---

2. In its Post-trial Reply Brief filed April 30, 1979, the Government advances a novel argument in favor of its assessment. In the brief, the Government states: "Both of defendant's acknowledged experts testified that a bookie operation the size of plaintiff's would normally and reasonably be expected to accept wagers on both baseball and football during early Fall. Plaintiff never denied that he accepted baseball wagers. The weekly gross wagering amount upon which the assessments are based, however, was conservatively computed by McNeil solely on the basis of football wagers. Even if the Court should determine that the assessments can only be extended back to mid-September, the amounts assessed may be sustained on the basis that anticipated baseball and Monday night football wagers would increase the weekly gross volume of wagers to a level that would sustain the amounts assessed even for the shorter period of involvement. The Fifth Circuit applied such a rationale in *Carson,* 560 F.2d, pp. 699–700."

This argument advanced for the first time at such a late date in the history of this case attempts to justify the Government's present assessment of excise taxes by suggesting that it was "conservatively computed." However, at no point has the Government sought to amend its counterclaim to reflect further excise taxes based on "anticipated baseball and Monday night football wagers," not included in the prior computations. The mere fact that "plaintiff never denied that he accepted baseball wagers" is an insufficient premise at this late date to sustain the amounts assessed based on this bootstrap reasoning.