Joseph S. MARRANCA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Charles MARRANCA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 83–0619, 83–0620.

United States District Court,
M.D. Pennsylvania.

May 31, 1985.

Patrick E. Dougherty, Kingston, Pa., Joseph R. Reisinger, Wilkes-Barre, Pa., for plaintiffs.

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Plaintiffs' motion for litigation costs filed pursuant to 26 U.S.C. § 7430. The appropriate briefs and memoranda have been filed and the matter is now ripe for our decision.

### BACKGROUND

This matter stems from termination assessments made against the Plaintiffs by the Internal Revenue Service for the amount of $54,577.94 each. After the ter-mination assessments were made the Plaintiffs sought administrative review of the assessments with the Internal Revenue Service. The assessments were sustained by the Appellate Division on May 5, 1984 and thereafter, on May 11, 1983, the matter was filed in this Court.

The termination assessments were prompted by information obtained from the Pennsylvania State Police.

Commencing on January 30, 1983 legal wiretaps were placed by the Pennsylvania State Police on the residential telephone of Joseph Marranca at 107 Jean Street, Exeter, Pennsylvania, and the residential telephone of his brother Charles Marranca at 106 Jean Street, Exeter, Pennsylvania. These wiretaps revealed that the taxpayers were involved in accepting "layoff" bets on various sporting events (particularly football and basketball games), and further revealed the extent of the betting activity for the particular days on which the wiretaps were monitored. Based upon information received from the wiretaps and additional surveillance, search warrants were issued for the premises of the taxpayers and executed on February 23, 1983.

During the course of the searches, the State Police, in conjunction with various local police, seized approximately $58,000 in cash.

Based on its assessment and analysis of the wiretap and search and seizure information obtained by the State Police, the Internal Revenue Service concluded that the taxpayers were operating as "bankers" in an illegal wagering operation for a period beginning at least as early as 1982 and ending at the time of the State Police raids on February 23, 1983. "Bankers" in such an operation are the people who control the illegal wagering operations. They make all payouts, pay commissions owed to betting pool sellers, and are literally the owners-operators of the betting business. Based upon the aforesaid information, the Service determined that average daily receipts of $11,400.00 were taken over the telephone of Charles Marranca and average daily receipts of $3,497.00 were taken over the

telephone of Joseph Marranca. These average daily receipts were then combined and multiplied by 53 days to determine a gross income from gambling for the two Plaintiffs of $789,852.00. [see *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir.1977)] The Internal Revenue Service then utilized a factor of 30% as a profit margin for the illegal wagering operation, resulting in an estimated net profit of $236,956.00. [see *Shades Ridge Holding Co. v. Commissioner*, 23 TCM 1665 (1964) aff'd sub. nom. *Fiorella v. Commissioner*, 361 F.2d 326 (5th Cir.1966)] This amount was then split equally between the Plaintiffs, again based on the wiretap information which indicated that the Plaintiffs were in the habit of splitting the profits from the enterprise equally.

Based upon this information, the Service made termination assessments against the Plaintiffs on March 7, 1983 for income taxes for the period of January 1, 1983 through and including February 23, 1983.

On February 29, 1984, this Court issued an Opinion and Order remanding the matter to the Commissioner of Internal Revenue. In our Opinion we noted that Commissioner was reasonable in making the assessment, but that, the taxpayers sustained their burden of showing that the amount of the assessment was not appropriate under the facts presented to this Court. We felt that the Commissioner should be given the opportunity to review the appropriate evidence concerning the type of profit margin that generally attaches to a sports gambling operation such as that carried by the Marrancas, and concluded that the appropriate action was to remand the matter to the Commissioner for further review of the amount of the assessments. The matter was eventually settled by agreement to pay tax on a 7% profit margin rather than 30%.

PLAINTIFFS' § 7430 MOTION

Title 26 of the Code, § 7430, provides that in the case of any civil proceeding brought in a court of the United States in connection with the refund of any tax "the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding." Id. § 7430(a). The Code states that "reasonable litigation costs" include, inter alia, "reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding." Id. § 7430(c)(1)(A)(iv).

■ In order to collect reasonable litigation costs under 26 U.S.C. § 7430, the party seeking such costs must have prevailed in the underlying action. Here, the United States does not agree that the Plaintiffs are the prevailing parties and thus the Court must determine that issue pursuant to 26 U.S.C. § 7430(c)(2)(B). In making this determination we look to 26 U.S.C. § 7430(c)(2)(A), which provides as follows:

In general—the term "prevailing party" means any party to any proceeding described in subsection (a) ... which—

(i) establishes that the position of the United States in the civil proceeding was unreasonable, and

(ii) (I) has substantially prevailed with respect to the amount in controversy or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented.

Here, the Government concedes that the Plaintiffs have satisfied the requirement of Section 7430(c)(2)(A)(ii), since they have "substantially prevailed with respect to the amount in controversy" in that they have obtained a significant reduction in the amounts of the termination assessments against them as a result of the settlement with the Government.

The Government correctly argues, however, for the Plaintiffs to succeed, they must also satisfy Section 7430(c)(2)(A)(i), which requires establishing that the position of the United States in the civil proceeding was unreasonable.

Here, the Plaintiffs argue that because the Government sought to recover an amount by way of taxes (based on a *30%* profit margin) that was so far in excess of what finally was agreed upon in settlement (based on a *7%* profit margin), that the

Government's position must therefore be considered unreasonable. An extension of that argument is that it required extensive litigation and negotiation in settlement, all of which was costly to the Plaintiffs, to finally settle the Government's claim against them.

The Government, on the other hand, argues that it was the Plaintiffs' own violation of the law (Int.Rev.Code of 1954 Sec. 6001, 26 U.S.C.) in failing to keep accurate records and report their income properly that made it extremely difficult for the Government to assess an accurate amount of taxes. Here, too, the Government argues that it used current case law (see Shades Ridge, supra) to assist it in determining the amount of taxes claimed, even though that case eventually turned out to refer to a different type of gambling than that which was engaged in by the Plaintiffs. While the Government concedes that eventual investigation and review of the case determined that their estimates of profit in the type of operation in which the Plaintiff was engaged was excessive, it argues that it was not unreasonable under circumstances where the Plaintiffs were engaged in illegal conduct and further where they failed to provide the Government with any records at all, upon which the Government could make an accurate and responsible allocation of taxes.

In looking to the history of 26 U.S.C. § 7430, we find that Congress intended that the awarding of fees to prevailing parties "will deter abusive actions and overreaching by the Internal Revenue Service and will enable individual taxpayers to vindicate their rights regardless of their economic circumstances." H.R.Rep. 97–404, 97th Cong.2d Sess. 16 (1982), at 11.

Further reference to this history reveals that it was Congress' intention that in making its determination on whether or not the Government's position was unreasonable in a given situation, the Court should take into account all pertinent factors, including:

(1) Whether the Government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case,

(2) Whether the Government pursued the litigation against the taxpayer for purposes of harassment or embarassment, or out of political motivation, and

(3) Such other factors as the Court finds relevant. (H.R.Rep. 97–404, supra. at 12).

In this day and age, when by Statute, and otherwise, successful parties, particularly against the Government and Government agencies, may be entitled to payment of counsel fees and costs, a number of decisions have provided guidelines and philosophic directives for determining the "reasonableness" of the Government's conduct in defending a case, or whether the Government was "substantially justified" in its handling of a claim against it. The rationale in those cases is helpful to us here also. For instance, in *National Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 703 F.2d 700 (3d Cir.1983), we find the following:

The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified. The committee reports make this clear. They explain that the standard of reasonableness "should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case." S.Rep. No. 253, supra at 7; H.R. Rep. No. 1418, supra at 11, 1980 U.S. Code Cong. & Ad.News at 4990. Indeed the committee reports show that Congress did not intend the "substantially justified" standard to "require the Government to establish that its decision to litigate was based on a substantial probability of prevailing." Id. Making the outcome of the case determinative would virtually eliminate the "substantially justified" standard from the statute. *Broad Ave. Laundry and Tailoring v. United States*, 693 F.2d 1387 (C.A. Fed.1982).

Earlier, in 1977, the Third Circuit Court of Appeals struck a balance between the legitimate interest in assessing applicable taxes on income derived from illegal gambling and the right to be free from oppressive arbitrary assessments. (see *U.S. v. Gerardo*, supra) More recently, the Court, citing *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), endorsed its *Gerardo* decision and stated that the IRS has sometimes overreacted and that the taxpayer's failure to keep adequate records does not justify a "naked assessment without foundation whatsoever". *L. Jay Walker v. Commissioner of Internal Revenue*, 757 F.2d 36 (3d Cir. 1985).

█ Using the foregoing guidelines we find no proof that the Government's position was unreasonable under the circumstances of this case. Here, we have an instance where the Plaintiffs tried to avoid all payment of taxes by not reporting any income whatsoever, and further, complicated the process of determining the amount of taxes they did owe by keeping no records at all, which would allow the Government to make a reasonable assessment against them. In other words, the Plaintiffs forced the Government to make a termination assessment by not reporting any income. And even though the Plaintiffs eventually showed their profits were not as great as the Defendant originally claimed, had no action been taken by the Defendant, the Plaintiffs would have paid no tax at all. It is hard to imagine that the Congress intended to consider parties such as the Plaintiffs in this case, as prevailing parties, under circumstances where their initial action was designed to evade any payment of taxes on this substantial illegal income.

It is the finding of this Court then that the Plaintiffs are not the prevailing parties who would be entitled to payment of their legal fees, because they have been successful in proving only one prong of the test required for a grant of such fees, and further, it is our finding that in the area where they did "prevail", they did not fully "prevail" since their original effort was to pay no tax at all, when in the final analysis they were only successful in negotiating a lesser amount than the Government originally demanded.

Under all of the circumstances of this case, therefore, it is the determination of this Court that the Plaintiffs have not proved their right as prevailing parties to any fees, and the motion will therefore be denied. See *Kaufman v. Egger*, 584 F.Supp. 872 (D.Maine, 1984), and *Randazzo v. U.S. Dept. of Treasury, et al.*, 581 F.Supp. 1235 (W.D.Pa.1984).