CHRIS PETTI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Petti v. Commissioner
Docket No. 13861-86
United States Tax Court
T.C. Memo 1990-256; 1990 Tax Ct. Memo LEXIS 275; 59 T.C.M. (CCH) 675; T.C.M. (RIA) 90256; May 23, 1990, Filed *275 Nicholas De Pento, for the petitioner. Patrick E. McGinnis and Alice M. Harbutte, for the respondent. SWIFT, Judge. SWIFT
*930 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax liability and additions to tax as follows: Additions To Tax, I.R.C. Secs. [1]
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
1980
$  4,268
$ 213
--
--
1981 10,095
--
$ 505
*
By amended answer, respondent asserted additions to tax for fraud under section 6653(b) in the amounts of $ 2,234 for 1980 and $ 5,047 for 1981. The adjustments in question relate to the amount of income petitioner earned from participating in a gambling business and petitioner's liability for the additions to tax. FINDINGS OF FACT *276 Some of the facts have been stipulated and are so found. Petitioner was a resident of San Diego, California, at the time he filed his petition in this case. On December 23 and 24, 1980, and on January 3, 1981, Federal judges in Los Angeles, Las Vegas, and San Diego, as part of an investigation of illegal gambling activities, authorized agents of the FBI to wiretap certain telephones located in the cities indicated. The wiretaps were established and were conducted by the FBI agents during the last two weeks of December of 1980 through the end of January of 1981. Tape recordings of the wiretapped telephone conversations were made by the FBI agents. Many of the conversations reflected the placing of bets by the participants in the telephone conversations on college and professional post- *931 season and playoff football games. The conversations also indicated that certain of the participants in the conversations, including petitioner herein, were engaged in the business of running a gambling or bookmaking operation. Wagers were accepted consistent with betting lines received from bookmakers in Las Vegas. Commissions of 10 percent were charged on all losing wagers that *277 had been accepted. Wagers were accepted on both sides of the football games, and lay-off wagers were made to balance the risks associated with wagers accepted. The gambling operation conducted its business in cash. The participants used code names, rather than their real names, to participate in the transactions. Books and records that were maintained by the participants in the gambling operation and that reflected specific wagers accepted each week were destroyed at the end of each week by the participants in the gambling operation. Admissible evidence indicates that the gambling operation earned significant income in 1980 and 1981. On August 7, 1981, petitioner and other participants in the gambling operation were indicted by a Federal grand jury for the United States District Court for the Southern District of California and were charged with various illegal gambling activities under, among other provisions, 18 U.S.C. sections 371 and 1955. After a trial, petitioner was found guilty of a number of the criminal charges under 18 U.S.C. section 1955. During 1980 and 1981, petitioner also was employed as a home improvement salesman *278 for P & T Construction Co., Inc. On their joint Federal income tax returns for 1980 and 1981, petitioner and his wife Virgie G. Petti reported the following income: Year
Taxpayer
Source
Amount
1980
Petitioner
Wages
$  6,800
Petitioner
Sch C Income-P&T
14,150
Virgie
Wages
336
Total
$ 21,286
1981
Petitioner
Wages
$  7,050
Petitioner
Sch C Income-P&T
15,200
Virgie
Wages
5,063
Annuity Refund
20,695
State Tax Refund
358
Total
$ 43,366
On petitioner's and his wife's joint Federal income tax returns for 1980 and 1981, no income was reported with respect to petitioner's participation in the gambling operation. On audit and based on the documentary and other evidence available to respondent, respondent determined that the gambling operation in which petitioner participated earned income of at least $ 80,000 in 1980 and $ 123,000 in 1981 and that petitioner's share of the net income or profits of the gambling operation was $ 15,000 in 1980 and $ 23,062 in 1981. Only the negligence additions to tax were determined by respondent in his notice of deficiency. The fraud *279 additions to tax were first asserted by respondent for both 1980 and 1981 in an amended answer. OPINION Adjustments to Income
At trial, petitioner asserted the Fifth Amendment and refused to testify, and petitioner did not call any witnesses. Petitioner argues that respondent's notice of deficiency is arbitrary and capricious and so utterly without foundation that it is not entitled to the usual presumption of correctness associated with notices of deficiency. Petitioner cites Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672 (1977), in support of his argument. In Gerardo v. Commissioner, 552 F.2d 549, 554-555 (3d Cir. 1977), affg. in part, revg. in part, and remanding a Memorandum Opinion of this Court, the Third Circuit stated -- in order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in gambling activity during the period covered by the assessment. Without that evidentiary foundation, minimal though it may be, an assessment may not be supported even where the taxpayer is *280 silent. While we realize the difficulties which the Commissioner encounters in assessing deficiencies in circumstances such as are presented here, we nevertheless must insist that the Commissioner provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be given his presumption of correctness. Here, the record is barren of that underlying evidence relating [the taxpayer] to wagering operations * * * . [Citations omitted.]
The Ninth Circuit (to which an appeal in this case would lie), in Weimerskirch v. Commissioner, supra at 361, quoted the above passage from Gerardo and concluded that -- Even though Weimerskirch did not testify in the present case, following the teachings of Gerardo, supra, the Commissioner still cannot rely on the presumption in the absence of a minimal evidentiary foundation. In the instant case, respondent offered and the Court admitted extensive evidence concerning the gambling operation and petitioner's *932 involvement therein. That evidence includes testimony of one of the other participants in the gambling operation and testimony of two of the individuals placing *281 wagers, transcripts of tape recordings of the wiretapped telephone conversations, a copy of the criminal indictment with respect to a portion of which petitioner was convicted, and a factual stipulation that was entered into by petitioner in the criminal case (which latter document was admitted into evidence solely for the purpose of further establishing respondent's basis for the adjustments made in his notice of deficiency). Respondent in this case clearly has established a sufficient foundation in support of his notice of deficiency to satisfy the foundational predicate required by the Ninth Circuit in Weimerskirch. Extensive evidence links petitioner to the gambling business and operation, and sufficient evidence supports the amount of income with respect thereto that has been charged to petitioner by respondent. Accordingly, a presumption of correctness attaches to respondent's notice of deficiency, and based thereon petitioner has totally failed to overcome his burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure. We sustain respondent's adjustments to petitioner's income tax adjustments in their *282 entirety. Additions to Tax
As noted, in his notice of deficiency, respondent determined only the negligence additions to tax. In his amended answer, respondent first raised the fraud additions to tax under section 6653(b) for both 1980 and 1981. In his opening post-trial brief, respondent argues the fraud additions to tax, but in his reply post-trial brief respondent does not mention the fraud additions to tax and respondent asserts only the negligence additions to tax. Further, in his reply post-trial brief (pp. 38-39) respondent states as follows: The only question before this Court is whether the wiretaps, the transcriptions of conversations, the stipulation, and the grand jury statements are sufficient to satisfy the Weimerskirch Rule. [Emphasis supplied.] and further The burden of proof on the deficiency and the negligence penalty is on the petitioners. * * * Respondent is entitled to a finding that petitioner failed to carry his burden of proof and that the deficiency and additions to tax under I.R.C. sec. 6653(a) were computed correctly. [Emphasis in the original.] We believe that respondent's failure *283 in his reply brief to argue or even to mention the fraud additions to tax combined with his assertion therein of the negligence additions to tax and his statement that the only question before the Court is whether the evidence satisfies the requirements of Weimerskirch constitute a concession or abandonment by respondent of the fraud additions to tax. We so hold. With regard to the negligence additions to tax under section 6653(a), our analysis and conclusion, as set forth above, concerning the presumption of correctness associated with respondent's notice of deficiency are applicable. Petitioner thus has the burden of proof with regard to the negligence additions to tax. See Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Having failed to testify and having failed to offer any significant evidence to contradict respondent's evidence on this issue, petitioner has failed to satisfy his burden of proof, and we sustain respondent's determination of the *284 negligence additions to tax for both 1980 and 1981. One evidentiary question remains unresolved. At trial respondent called as a witness Stephen Lewis Kahn, one of the participants with petitioner in the gambling operation. When Mr. Kahn failed to recollect many of the facts concerning which he had testified before the Federal grand jury, respondent offered into evidence portions of Mr. Kahn's grand jury testimony as an exception to the hearsay rule under rule 804(b)(3) of Federal Rules of Evidence ("Rule 804(b)(3)"). That exception provides, among other things, that where a witness' testimony concerning certain subject matter is unavailable in the present proceeding due to the witness' loss of memory (see rule 804(a)(3) of Federal Rules of Evidence) and where the witness made prior statements concerning the subject matter that were against his or her pecuniary or proprietary interests or that would tend to subject him or her to civil or criminal liability, such prior statements may be admitted into evidence in the present proceeding. Petitioner argues that Mr. Kahn's grand jury testimony does not qualify for admission under Rule 804(b)(3) because Mr. Kahn testified before the *285 grand jury under a grant of criminal immunity and therefore that his testimony before the grand jury should not be regarded as tending to subject him to criminal liability. Petitioner's argument ignores the fact that Mr. Kahn's grand jury testimony was contrary to his pecuniary interests and did tend to subject him to civil liability (e.g., civil tax deficiencies similar to those determined against petitioner herein), each of which is an independent ground for admitting under Rule 804(b)(3) the otherwise *933 hearsay testimony. For the reasons stated, we admit into evidence pages 83 through 131 of the transcript of Mr. Kahn's grand jury testimony. An appropriate order and decision will be entered for the respondent in the amounts of the deficiencies and additions to tax for negligence. Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩
*. 50% of the interest due on $ 10,095. ↩