STEPHEN S. DAY AND JEANETTE L. DAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD WISE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Day v. Commissioner
Docket Nos. 23202-87, 23301-87
United States Tax Court
T.C. Memo 1991-140; 1991 Tax Ct. Memo LEXIS 159; 61 T.C.M. (CCH) 2258; T.C.M. (RIA) 91140; March 27, 1991, Filed *159 Decision will be entered for the respondent. Saul A. Bernick and Neal J. Shapiro, for the petitioners. Michael A. Urbanos, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes for taxable years 1982 and 1983: Additions to Tax
Docket No.
Years
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661
23202-87
1982
$ 27,762
$ 13,881
*
$ 6,941
1983
99,379
49,690
*
24,845
23301-87
1982
31,599
15,800
*
7,118
1983
102,913
51,457
*
24,571
After concessions by petitioner Richard D. *160 Wise, the issues for decision are: (1) Whether petitioners had unreported income during taxable years 1982 and 1983 from the operation of massage parlors; (2) whether petitioner Richard D. Wise is entitled to additional business expense deductions under section 162; (3) whether petitioners are liable for the addition to tax for fraud for taxable years 1982 and 1983; (4) whether petitioners are liable for the addition to tax for a substantial understatement of income tax under section 6661; and (5) whether petitioner Jeanette L. Day is entitled to relief under section 6013(e) as an innocent spouse. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Business Operations
Petitioners resided in Minnesota when they filed their petitions. Petitioners Stephen S. Day (Day) and Richard D. Wise (Wise) were equal partners in "The Club," which was in the business of owning and operating massage parlors. During 1982, The Club owned and operated three massage parlors; the No. 1 Health Club, Royal Knight, and Donna Lee's. During 1983, The Club owned and operated two additional massage parlors *161 called 24 KT and Sauna Village. All of the massage parlors were located in Minneapolis, Minnesota. The Club reported gross income of $ 274,023 in 1982 and $ 655,224 in 1983 on its Federal income tax returns. Day and his spouse reported gross income of $ 116,243 in 1982 and $ 204,286 in 1983 from The Club on their Federal income tax returns, while Wise reported gross income of $ 95,827 in 1982 and $ 199,988 in 1983. On September 15, 1982, the Fridley, Minnesota police department executed a search warrant at the No. 1 Health Club and seized business records. Among the records seized were leases, sales slips, invoices, membership cards, ledger books, bank statements, and monthly income reports pertaining to the No. 1 Health Club and the Royal Knight. All seized records were eventually turned over to respondent. A membership card was made out for each customer at the No. 1 Health Club. Each time a customer received services at the No. 1 Health Club, the date and the masseuse's name was recorded on the back of the membership card. In addition, a code of "O" or "A" was written on the back of the membership cards. An "A" meant that the customer had received services in addition *162 to a basic massage. Approximately 95 percent of the entries on the backs of the membership cards at the No. 1 Health Club had the "A" coding. Sales slips were used by petitioners to record customer sales in both 1982 and 1983. The sales slips were filled out for each customer who received services, and were sequentially numbered. The customer's name, the date, the masseuse's name, and the amount paid by the customer for entry into the massage parlor was noted on the sales slips. The amount paid by the customer to enter the massage parlor was known as the "door money." The door money averaged $ 25 per customer in 1982 and 1983. No customer was allowed into a private room in the back of the massage parlor without paying the door money. The door money was collected by the masseuse at the time the sales slip was made out. The door money and the sales slip were then put into a safe or hiding place located in the massage parlor. The masseuses at the various massage parlors were not compensated for their services by The Club. Each masseuse entered into a lease with The Club with the masseuse as lessee and The Club as lessor. Under the lease agreements, the masseuses were entitled *163 to use the back rooms to give massages. The lease agreements provided for two methods of payment by the masseuses for the use of the back rooms. The first method provided for a payment to The Club of 40 percent of the total fee received by the masseuse for her service to a customer. An alternative method provided for a set fee to be paid to The Club by each masseuse each time she used a back room. Most of the masseuses chose the alternate method of paying the lease fee based on each customer served. The lease fee payable by each masseuse for each customer at each location was as follows: Massage Parlor
1982
1983
No. 1 Health Club
$ 10  $ 15   Royal Knight
5-10
10-15
Donna Lee's
10  15   24 KT
n/a 15   Sauna Village
n/a 15   The lease fee was known as the "back room money."  For each customer seen by a masseuse, the back room money had to be paid to The Club. To verify that the correct amount of back room money was paid, the sales slips with each masseuse's name would be totaled for each shift and then multiplied by the set rate. However, the back room money was not noted on the sales slips. If the total back room money was short, the masseuses *164 were required to make up the difference. The back room money was placed in a safe or hiding place by a masseuse at the end of a shift at each location. Each masseuse retained any funds in excess of the back room money paid to her by a customer. Either Wise or Day collected the day's receipts. Wise generally performed the bookkeeping duties for the partnership. A separate ledger was maintained for each massage parlor that summarized sales slips for 1982. Wise prepared duplicate ledgers which, in addition to providing the individual sales records for the massage parlors operating in 1982, contained an untitled column of numbers which listed the number of customers served per day at each massage parlor. The door money was regularly deposited into a checking account maintained by The Club in Minneapolis. Bank deposit slips and check stubs for expense disbursements were then provided to The Club's accountant, who then prepared a monthly profit and loss statement, a bank reconciliation, and a summary of the partners' draws. Respondent's Examination
Respondent examined copies of all sales slips that were seized in the September 1982 raid on the No. 1 Health Club, as well *165 as all bank statements of The Club for 1982. Respondent also examined copies of the original ledgers seized in the September 1982 raid. In addition, respondent prepared a summary f the duplicate ledgers for 1982. Respondent reconciled the amounts per ledger and per sales slips to the bank deposits. He also reconciled the total of deposits per ledger and per bank to the 1982 Federal income tax return of The Club. Respondent determined that the back room money was not reflected on the sales slips for 1982 or 1983. Respondent determined that Day and Jeanette L. Day (Jeanette) failed to report partnership income of $ 55,070 in 1982 and $ 196,568 in 1983, and that Wise failed to report partnership income of $ 55,070 in 1982 and $ 196,568 in 1983. In addition, respondent determined that Wise failed to substantiate claimed business expense deductions of $ 5,159 in 1982 and $ 9,258 in 1983. Jeanette L. Day
During the years in issue, Day and Jeanette lived in Grand Rapids, Minnesota, which is approximately 200 miles from Minneapolis. Other than twice yearly trips to visit relatives, Jeanette was never in Minneapolis. She never visited any of the massage parlors. She had no *166 contact with any of the masseuses, did not prepare the books, balance the bank statements, or make any deposits. She had no knowledge how the massage parlors operated. The fact that Day operated massage parlors was a source of constant friction in the marriage, and she avoided any discussion of business affairs. She never met The Club's accountant, and signed her Federal income tax returns without reading them at the direction of her husband. OPINION Gross income includes the distributive share of partnership income. Sec. 61(a)(13). Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liability. In the absence of such records, respondent may compute the taxpayer's income by any other reasonable method. Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968); Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989). Respondent is permitted to use indirect methods of proof to reconstruct income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Although respondent's reconstruction of income need not be exact, it must be "reasonable in light of all surrounding facts and circumstances." *167  Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Various courts have approved methods of income reconstruction which project or extrapolate from a limited amount of data. Adamson v. Commissioner, 745 F.2d 541, 548 (9th Cir. 1984); Gerardo v. Commissioner, 552 F.2d 549 (3d Cir. 1977); Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Figueiredo v. Commissioner, 54 T.C. 1508 (1970), affd. without opinion (9th Cir. 1973). At trial, the evidence introduced by petitioners consisted primarily of their unsupported, uncorroborated testimony. We are not required to accept petitioners' self-serving testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. What little documentary evidence was offered by petitioners is irrelevant to the question of whether petitioners Day and Wise failed to report the back room money. Petitioners offered no competent evidence whatsoever showing that respondent's accounting of the back room money is inaccurate. No business records or *168 analysis establishing petitioners' business practices were introduced. Instead, petitioners relied on their vague, speculative, and conclusory testimony that respondent had overstated the amount of back room money earned by the businesses. A decision favorable to petitioners cannot rest on assumption or speculation. It must rest on facts. Wood Corp. of Delaware v. Commissioner, 22 B.T.A. 1182 (1931), affd. 63 F.2d 1023 (6th Cir. 1933). Because petitioners have failed to satisfy their burden of proof, we sustain respondent's determination with respect to the unreported partnership income. Claimed Business Expense Deductions
Petitioner Wise bears the burden of proving respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Wise has failed to meet his burden with respect to this issue. He offered no competent evidence proving he is entitled to the claimed business expense deductions. We therefore sustain respondent's determination. Additions to Tax Under Section 6653(b)
Section 6653(b)(1) provides for an addition to tax of 50 percent of the amount of a tax deficiency *169 if any part of the underpayment is due to fraud. Section 6653(b)(2) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to fraud. To sustain an addition to tax under section 6653(b), respondent has the burden of proving by clear and convincing evidence: (1) That there was an underpayment of tax; and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). If respondent establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud unless petitioner establishes otherwise. Sec. 6653(b)(2). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Estate of Pittard, 69 T.C. 391 (1977). We find that there were underpayments for taxable years 1982 and 1983. Accordingly, the first *170 element under section 6653(b) is established for both taxable years. To establish the second element under section 6653(b), respondent must demonstrate by clear and convincing evidence that the taxpayer had a specific intent to evade a tax due and owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Fraud is never presumed but must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Nonetheless, fraud need not be established by direct evidence, but may be established from relevant facts and circumstances. Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213 (1971). Understated income, inadequate records, implausible or irreconcilable explanations, concealment of assets, and failure to cooperate with tax authorities are all indicia of fraud. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. The mere failure to report income is not *171 sufficient to establish fraud. However, consistent and substantial understatements of income is by itself strong evidence of fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). In the case of a joint return under section 6013, section 6653(b) shall not apply with respect to the tax of the spouse unless some part of the underpayment is due to the fraud of such spouse. Sec. 6653(b)(4). We find that respondent has demonstrated by clear and convincing evidence that both Day and Wise had a specific intent to evade a tax due and owing. Over the two years at issue they consistently, systematically, and substantially understated their income from the massage parlors. Their understatement did not consist of mere "skimming" of their receipts, but a failure to report one of the two sources of profit from their business, the back room money. In addition, Day and Wise intentionally kept inadequate and misleading records. Their sales slips did not record the receipt of the back room money. The funds were not deposited, and therefore were not accounted for on their bank statements. In addition, the back room money was not accounted for, as was the front *172 door money, on the businesses' ledgers. Their failure to keep adequate records is a compelling indicia of fraud. Finally, Day and Wise attempted to conceal the understated income. The masseuses were instructed not to note the back room money on the sales slips. The income was not deposited, and its ultimate disposition was not explained at trial. Finally, the income was concealed from The Club's accountant, who relied on the records of Day and Wise in preparing a partnership return and the individual returns of the partners. In conclusion, we find that Day and Wise intentionally engaged in conduct designed to evade tax believed to be owing. Their evasion was effectuated by conduct designed to conceal, mislead, and otherwise prevent the collection of such tax. We therefore sustain respondent's determination with respect to the addition to tax under section 6653(b)(1) and (2). Substantial Understatement of Income Tax Under Section 6661
Section 6661 authorizes an addition to tax when there is a substantial understatement of income tax in any given taxable year. Sec. 6661(a). The addition to tax is equal to 25 percent of the amount of any underpayment attributable to the *173 substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2). The addition to tax under section 6661 for each of the years at issue is applicable to petitioners if the understatements as adjusted by this opinion are substantial. The amount of the understatement is reduced by that portion of the understatement which is attributable to: (1) The tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). The numerical requirements of section 6661(b)(1) are satisfied for taxable years 1982 and 1983. Petitioners have failed to show any substantial authority to support their position. *174 In addition, petitioners failed to show that they disclosed on their returns any facts relevant to their position. Hence, the reduction allowed by section 6661(b)(2)(B) is not available to petitioners. We therefore uphold respondent's determination of the additions to tax under section 6661. Relief As An Innocent Spouse
Section 6013(a) permits a husband and wife to file a joint return. Under section 6013(d)(3), if a husband and wife file a joint Federal income tax return for a year, then "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."  Under section 6013(e), if certain requirements are met for a year, than a spouse may be relieved of a portion of this joint tax return liability for the year. Section 6013(e)(1) provides that: (a) where a joint return was filed, (b) on that return there is a substantial understatement of tax which is attributable to grossly erroneous items of one spouse, (c) the other spouse establishes that in signing the return he or she did not know and had no reason to know that there was such substantial understatement, and (d) taking into account all the facts and circumstances, *175 it is inequitable to hold the spouse liable for the deficiency in tax attributable to such substantial understatements, then the spouse to whom the substantial underpayment was not attributable is relieved from liability for the tax on such a substantial understatement. Petitioners bear the burden of proving that Jeanette has satisfied each statutory requirement of section 6013(e). Failure to prove any one of the statutory requirements will prevent petitioner from qualifying for relief. Rule 142(a); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126 (1990); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). Respondent concedes that petitioners filed a joint return and on that return there is a substantial understatement attributable to grossly erroneous items of Day. However, respondent argues that Jeanette has not established that in signing the return she did not know and had no reason to know that there *176 was such substantial understatement, and that she has not established that it is inequitable to hold her liable for the deficiency attributable to such substantial understatements. We find that Jeanette has failed to establish that, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency in tax attributable to the substantial understatements. A factor to be considered in determining whether it is inequitable to hold a person liable for a deficiency in tax is whether the person seeking relief significantly benefited, directly or indirectly, from the items omitted from gross income. Sec. 1.6013-5, Income Tax Regs. Jeanette and Day testified, in extremely general terms, that they did not live an extravagant life. However, they did not enter into evidence a list of their assets, and did not explain the ultimate disposition of the undeclared income in the amounts of $ 55,070 for 1982 and $ 196,568 for 1983. Without any evidence to the contrary, we sustain respondent's determination that Jeanette directly benefited from the items omitted from gross income. We therefore find that Jeanette does not qualify for relief under *177 section 6013(d)(3), and is not relieved of any portion of the joint tax return liability for either year. In light of the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest payable under section 6601 with respect to the portion of the underpayment attributable to fraud.↩